**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ALARM.COM INCORPORATED and ICN ACQUISITION, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| VIVINT, INC., | ) ) | |
| Defendant. | ) ) | |
| VIVINT, INC., | ) ) | Case No. 2:23-cv-00004-JRG-RSP |
| Counterclaim-Plaintiff, | ) ) | |
| v. | ) ) | |
| ALARM.COM INCORPORATED and ADT LLC (d/b/a ADT SECURITY SERVICES) | ) ) ) | |
| Counterclaim-Defendants. | ) ) ) ) | |

**<ins>VIVINT, INC.'s COUNTERCLAIMS AGAINST ALARM.COM INC. AND ADT LLC
(d/b/a ADT SECURITY SERVICES)</ins>**

## INTRODUCTION TO COUNTERCLAIMS

Defendant and counterclaim plaintiff Vivint, Inc. ("Vivint") by its undersigned counsel, files these counterclaims against plaintiff and counterclaim defendant Alarm.com Incorporated ("Alarm.com") and third-party counterclaim defendant ADT LLC doing business as ADT Security Services ("ADT") (collectively "Counterclaim Defendants").[1]

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., including, but not limited to, 35 U.S.C. §§ 271, 281, 283, 284, and 285.

2.      This action is based on Alarm.com's and/or ADT's infringement of U.S. Patents No. 6,160,477 ("the '477 patent"), No. 6,211,782 ("the '782 patent"), No. 6,542,075 ("the '075 patent"); No. 6,727,811 ("the '811 patent"), No. 6,748,343 ("the '343 patent"), No. 6,829,478 ("the '478 patent"), No. RE43,598 ("the '598 patent"), No. 8,193,932 ("the '932 patent"), No. 8,698,622 ("the '622 patent"), No. 9,767,631 ("the '631 patent"), No. 9,972,181 ("the '181 patent"), No. 10,133,935 ("the '935 patent"), No. 10,242,517 ("the '517 patent"), and No. 10,347,172 ("the '172 patent") (collectively "Vivint Asserted Patents").

3.      Founded in 1999, Vivint has become a leading smart home company in North America.  Vivint is dedicated to redefining the home experience with intelligent products and services, serving over 1.9 million customers throughout the United States.  Vivint has an

---

[1] Vivint has filed a motion to dismiss the Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b). By filing the present counterclaims concerning Vivint Asserted Patents, Vivint does not waive any rights or remedies associated with its motion.  In addition, in light of Vivint's motion to dismiss, the present counterclaims do not include counterclaims directed to the Alarm.com and ICN patents asserted in the Complaint. Vivint reserves the right to bring such counterclaims if and when an answer to the Complaint becomes due.

integrated business model that includes its integrated smart home platform that it developed, professional monitoring, service and customer support.

4.      Vivint has been at the forefront of developing the technology underlying its intelligent products and services.  As a technology leader, Vivint has amassed a patent portfolio of over 400 patents, including the Vivint Asserted Patents.

5.      Alarm.com provides security and home automation products and services, including using a backend cloud-based platform for its offerings.

6.      Alarm.com has business relationships with security system dealers in the United States.  Upon information and belief, historically ADT has been, and continues to be, one of Alarm.com's largest business partner dealers.[2]

7.      Alarm.com and ADT have infringed the Vivint Asserted Patents, and continue to infringe certain Vivint Asserted Patents.

## **THE PARTIES**

8.      Vivint is a corporation duly organized and existing under the laws of the state of Utah, with its principal place of business at 4931 North 300 West, Provo, Utah 84604.  Vivint is the owner of all of the Vivint Asserted Patents.

9.      In paragraph 7 of its Complaint, Alarm.com avers that it is a Delaware corporation with its principal place of business at 8281 Greensboro Drive, Suite 100, Tysons,

---

[2] According to a 2022, Q3 10-Q filing by ADT, Inc. (parent company for ADT LLC), as of September 30, 2022, Google has the contractual right to require ADT, Inc., with certain exceptions, until an integration of certain Google products, to exclusively offer Google Devices and Services without integration for all new professional installations and for existing customers who do not have ADT Pulse or ADT Control interactive services.  Thus, upon information and belief, ADT customers who have ADT Control or ADT Pulse interactive services continue to utilize the Alarm.com backend platform.  As directed to ADT, the present counterclaims are directed to the ADT products and service offerings that have or currently utilize the Alarm.com backend platform, including but not limited to ADT Control and ADT Pulse interactive services.

2

Virginia 22102.  Alarm.com has a registered agent C T Corporation System at 1999 Bryan St., Suite 900, Dallas Texas 75201-3136.

10.     Upon information and belief, ADT is a Delaware limited liability company with its principal place of business at 1501 Yamato Road, Boca Raton, Florida 33431.  ADT has a registered agent C T Corporation System at 1999 Bryan St., Suite 900, Dallas Texas 75201-3136.

11.     Upon information and belief, ADT is registered in Texas as doing business as "ADT Security Services."

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Vivint's counterclaims under 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patents).  This is an action for patent infringement against Alarm.com and ADT arising under the patent laws of the United States.

13.     Alarm.com has submitted to personal jurisdiction of this Court through its filing of its Complaint against Vivint in this action.

14.     Venue is proper in this Court as to Alarm.com because Alarm.com filed the Complaint in this action.[3]

15.     This Court has personal jurisdiction over ADT because ADT conducts business in and has committed acts of patent infringement and/or induced others to commit acts of patent infringement in this District, the state of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over ADT would not offend the traditional notions of fair play and substantial justice. Upon

---

[3] While venue is proper in this District for Vivint's counterclaims under 28 U.S.C. §§ 1391/1400(b) as outlined herein, it is Vivint's position that the District of Utah is the clearly more convenient forum for this action under 28 U.S.C. § 1404. Vivint will be seeking to transfer this entire action under 28 U.S.C. § 1404.

4880-4915-6948.3

information and belief, ADT transacts business with entities and individuals in the state of Texas

and in this District, by among other things, importing, offering to sell, distributing, and selling

products that infringe the Asserted Vivint Patents, including the infringing smart home security

systems and services that ADT purposefully directs into the state of Texas and this District as

alleged herein.  ADT transacts business within the state of Texas and in this District, including:

(a) at least a portion of the acts of infringement alleged herein and (b) regularly doing or

soliciting business, engaging in other persistent courses of conduct, and deriving substantial

revenue from goods and services provided to individuals and entities in the state of Texas and in

this District.

16.     Venue is proper as to ADT in this District pursuant to 28 U.S.C. § 1391[4] because,

upon information and belief, at least: (a) ADT has physical places of business in this District,

including at 4706 DC Dr, Tyler, TX 75701, at 215 Winchester Drive, Suite 105, Tyler, TX

75701, and at 7415 Eastex Plaza Drive, Suite 8, Beaumont, TX 77708[5]; (b) the physical places of

business are owned and controlled by ADT, and staffed with ADT employees who regularly

conduct ADT's business;[6] (c) ADT sells and supports infringing products, systems, and services

within this District, including itself and through distribution partners, retailers, and other related

---

[4] As a third-party counterclaim defendant, 28 U.S.C. § 1400(b) does not cover ADT.  *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 28 F.4th 1247, 1262-63 (Fed. Cir. 2022).  Nonetheless, ADT's connections to this District result in venue being proper under to 28 U.S.C. § 1400(b) as well.

[5] *See* https://www.adt.com/local/tx/tyler and https://www.adt.com/local/tx/beaumont.  All weblinks provided in the present counterclaims were last visited March 7, 2023.

[6] *See, e.g.*, https://www.adt.com/local/tx/tyler ("Our ADT Tyler team offers professional home security installation and a variety of security and automation products and solutions"); https://www.adt.com/local/tx/beaumont ("Our ADT Beaumont team offers professional home security installation and a variety of security and automation products and solutions.")

service providers; and (d) ADT has targeted Texas residents with advertising and offers to sell

ADT's smart home security systems, such as the "ADT Pulse" and "ADT Control."

17.     ADT recently admitted that it conducts business in this District.  *See Fractus, S.A.*

*v. ADT LLC d/b/a ADT Security Services*, Civil Action No. 2:22-cv-00412-JRG at Dkt. No. 21, ¶

7 (December 14, 2022 ED Texas).

## VIVINT'S PATENTED TECHNOLOGY

18.     As part of being a premier smart home technology provider, Vivint has developed

and launched its own proprietary fully integrated smart home security platform.  Vivint is

recognized throughout the industry for its products, innovation, and customer satisfaction. Unlike

many other companies such as Alarm.com and ADT, Vivint provides vertically integrated smart

home security systems, consultation, installation, and 24/7 monitoring and customer support.

19.     Vivint's proprietary systems generally include: (a) a backend platform, (b) a user

panel that is installed in a customer's home, (c) various smart devices installed in a customer's

home, (d) a smartphone application control for users, and (e) monitoring by Vivint.

20.     Along with traditional sensors such as door/window sensors, motion sensors, and

the like, exemplary Vivint smart devices include: (i) smart security cameras, (ii) smart locks, (iii)

smart garage door openers, (iv) smart thermostats, (v) smart lighting control, (vi) doorbell video

cameras, and (vii) smart security intrusion sensors.

21.     Vivint has over 10,000 employees dedicated to developing and providing the

home experience with intelligent products and services to its nearly 2 million customers

throughout the United States.  Core to Vivint's success has been its drive to innovate.  The vast

majority of Vivint's innovation takes place at its own Innovation Center in Lehi, Utah.  Vivint

also has a Development Center in Boston, Massachusetts.

5

22.     Vivint's technological innovations are protected by, *inter alia*, a large portfolio of intellectual property, including the Vivint Asserted Patents that were duly issued by the United States Patent and Trademark Office.  As part of its commitment to innovation, Vivint has also acquired certain patents covering its innovations.

23.     Vivint is the owner by assignment of the Vivint Asserted Patents and holds all rights, title, and interest in and to the Vivint Asserted Patents, including the right to sue and recover for all past, present, and future infringements. Vivint has not authorized, licensed, or otherwise given permission for Counterclaim Defendants to use any of the Vivint Asserted Patents or to make, use, offer for sale, or sell any product or service under any claim of the Vivint Asserted Patents.

## ALARM.COM AND ADT'S INFRINGEMENT

24.     Vivint competes against Alarm.com and ADT for customers for the sale of smart home security systems.

25.     Alarm.com partners with various dealers to provide products and services through such dealers to customers, and Alarm.com operates a backend platform supporting and integral to such product and services.  ADT is an Alarm.com business partner dealer.  Upon information and belief, Alarm.com has thousands of other business partner dealers or service providers ("Other Dealers").

26.     ADT has sold and continues to offer for sale its Accused Systems enabled by Alarm.com (the "Accused ADT Systems") that provide home security and home automation. These systems may include cameras, video doorbells, thermostats, lights, door locks, garage door controllers, security panels, plugs, outlets, switches, motion sensors, door sensors, door locks, and others. Customers can manage smart home devices by logging in through ADT's

6

website/web-portal. Alternatively, ADT allows users to manage their systems through their smart phone applications.

27.    The ADT and Alarm.com smart home security systems and offerings, including, at least, the Accused Systems as further defined herein, infringe one or more claims of each of the Vivint Asserted Patents. Alarm.com and ADT each infringe the Vivint Asserted Patents, directly and indirectly, as outlined in greater detail herein.  Alarm.com and ADT do not have rights to practice the inventions protected by the Vivint Asserted Patents.

28.    Vivint has been damaged, including the loss of sales, by each of Alarm.com and ADT's infringement of the Vivint Asserted Patents.  Vivint is entitled, under at least 35 U.S.C. § 284, to recover damages from Alarm.com and ADT in an amount adequate to compensate for their acts of infringement, including Vivint's lost profits, but in no event less than a reasonable royalty for Alarm.com and ADT's acts of infringements, together with prejudgment interest and post judgment interest and costs and other relief as fixed by the Court.

29.    Vivint has satisfied the statutory requirements to collect pre-suit damages for infringement of each of the Vivint Asserted Patents, including, without limitation, any applicable provisions of 35 U.S.C. § 287, by, at least, providing notice via a website made available at https://www.vivint.com/legal/patents.

## THE VIVINT ASSERTED PATENTS

30.    This action asserts causes of action for infringement of the Vivint Asserted Patents, which are valid and enforceable United States patents.  Each Vivint Asserted Patent is described below.

31.    United States Patent No. 6,160,477 ("the '477 patent"), titled "Electronic message delivery system utilizable in the monitoring of remote equipment and method of same," was duly

and lawfully issued on December 12, 2000.  Vivint is the owner of all rights, title, and interest in and to the '477 patent and possesses all rights of recovery.  A true and correct copy of the '477 patent is attached hereto as Exhibit 1.

32.     The '477 patent generally claims a method of monitoring multiple pieces of remote equipment, wherein states of one or more parameters of each piece are determined and communicated to a communication substation, from which the states are communicated as an incoming message to a computer server, which is remotely user-accessible and stores a user-defined message profile that contains outgoing message routing instructions and specifies one or more remote communication devices to which an outgoing exception message is forwarded if an incoming message to the computer server is determined to be an incoming exception message indicative of improper operation of a piece of remote equipment.

33.     The '477 patent is generally directed to technological improvements in remote monitoring and notifications. For example, the '477 patent claims remote access to a server wherein users are permitted to configure message profiles. Further, users may configure their message profiles such that they receive messages pertinent to the individual. The invention provides significant technological improvements by providing such automated flexibility to users.

34.     United States Patent No. 6,211,782 ("the '782 patent"), titled "Electronic message delivery system utilizable in the monitoring of remote equipment and method of same," was duly and lawfully issued on April 3, 2001.  Vivint is the owner of all rights, title, and interest in and to the '782 patent and possesses all rights of recovery.  A true and correct copy of the '782 patent is attached hereto as Exhibit 2.

35.     The '782 patent generally claims a system for monitoring remote equipment, including one or more sensors monitoring one or more equipment parameters, a bi-directional interface unit that is connected to the sensors and equipment and that generates messages based on sensor data, a central computer server that receives interface unit messages and from which the interface unit receives command messages, and an Internet interface linked to the server and selectively remotely user-accessible via Internet, wherein user commands to activate, deactivate, or alter the remote equipment's functioning are entered into the Internet interface and transmitted therefrom to the server, and therefrom to the remote equipment, and wherein detection of exception conditions by the sensor causes the interface unit to generate and forward an incoming exception message to the server, which forwards an outgoing exception message to one or more predetermined user-defined communication devices.

36.     The '782 patent is generally directed to technological improvements in remote monitoring and notifications. For example, the '782 patent claims remote access to a server wherein users are permitted to configure message profiles. The '782 patent further claims providing commands to remote equipment as well as notifications related to that equipment. The invention provides significant technological improvements by providing such automated flexibility to users.

37.     United States Patent No. 6,542,075 ("the '075 patent"), titled "System and method for providing configurable security monitoring utilizing an integrated information portal," was duly and lawfully issued on April 1, 2003.  Vivint is the owner of all rights, title, and interest in and to the '075 patent and possesses all rights of recovery.  A true and correct copy of the '075 patent is attached hereto as Exhibit 3.

38.     The '075 patent generally claims a method for managing monitoring device data in an integrated information portal that communicates with monitoring devices and has a set of monitoring rules to establish event thresholds for and corresponding responses to rule violations, involving obtaining device data from the monitoring device(s) and a user-defined set of monitoring rules in which the user-defined event threshold is movement detection; dynamically processing the device data according to the user-defined monitoring rules; and generating a corresponding output that includes storing and saving video monitoring data upon movement detection.

39.     The '075 patent is generally directed to technological improvements in coordinating rules among devices within a system. The '075 patent allows flexibility in configuring and incorporating diverse devices within a system. For example, the '075 patent provides a plurality of defined rules to trigger actions among various devices within a system. Such flexibility allows users to configure multiple devices within one system.

40.     United States Patent No. 6,727,811 ("the '811 patent"), titled "Monitoring system," was duly and lawfully issued on April 27, 2004.  Vivint is the owner of all rights, title, and interest in and to the '811 patent and possesses all rights of recovery.  A true and correct copy of the '811 patent is attached hereto as Exhibit 4.

41.     The '811 patent generally claims a method of monitoring a site, involving monitoring for occurrence of a predetermined alarm condition, responding thereto by capturing pertinent alarm data, forwarding the alarm data to a remote location to determine whether the alarm data indicates a false alarm, and transmitting the alarm data to users if not a false alarm.

42.     The '811 patent is generally directed to technological improvements in false alarm filtering. The '811 patent allows for a system to intelligently filter false alarms. The

10

invention provides a technological improvement in the processing and filtering of false alarms by evaluating alarm data sent from a system to determine if an alarm event should be forwarded to a user or the authorities. The ability to filter false alarms is a significant issue in home security systems that monitor millions of homes.

43.     United States Patent No. 6,748,343 ("the '343 patent"), titled "Method and process for configuring a premises for monitoring," was duly and lawfully issued on June 8, 2004.  Vivint is the owner of all rights, title, and interest in and to the '343 patent and possesses all rights of recovery.  A true and correct copy of the '343 patent is attached hereto as Exhibit 5.

44.     The '343 patent generally claims an integrated information system that includes monitoring devices that obtain and transmit monitoring data from specified premises; a processing server that can configure and communicate with the monitoring devices; and a computer display that can generate a user interface for selecting client, premises, location, monitoring device, and processing rule data, and can transmit said data to the processing server, which configures the monitoring devices according to said data.

45.     The '343 patent is generally directed to technological improvements in configuration of devices from a user interface. The '343 patent allows flexibility in configuring and incorporating diverse types of devices within a system. For example, the '343 patent provides a common interface whereby users may make various selections such that diverse devices may be incorporated and operated within one system.

46.     United States Patent No. 6,829,478 ("the '478 patent"), titled "Information management network for automated delivery of alarm notifications and other information," was duly and lawfully issued on December 7, 2004.  Vivint is the owner of all rights, title, and

11

interest in and to the '478 patent and possesses all rights of recovery.  A true and correct copy of the '478 patent is attached hereto as Exhibit 6.

47.     The '478 patent generally claims a method of routing information to one or more recipients, involving receiving information from a monitoring system, storing user profiles, selecting and retrieving a single user profile corresponding to the monitoring system, extracting from the profile one or more notification contact data entries and a notification contact flow sequence specified in the profile, identifying from the data entries one or more communication receiving devices and their respective formats, generating interactive event notifications from the received information and the notification contact data entries, transmitting the event notifications to the devices according to the contact flow sequence, receiving from the devices information with subsequent actions to be taken, altering the contact flow sequence according to the actions, and carrying out the actions according to the altered contact flow sequence.

48.     The '478 patent is generally directed to technological improvements in remote monitoring and notifications. The '478 patent allows for a system to, among other functions, intelligently filter false alarms from systems by providing interactive notifications to users. For example, the '478 patent provides for notifications to users to confirm or otherwise provide feedback on potential alarm events. Such instant feedback avoids costly false alarms. The ability to filter false alarms is a significant issue in home security systems that monitor millions of homes.

49.     United States Patent No. RE43,598 ("the '598 patent"), titled "Method and process for configuring a premises for monitoring," was duly and lawfully issued on August 21, 2012, as a reissue of United States Patent No. 7,016,813, which was duly and lawfully issued on March 21, 2006.  Vivint is the owner of all rights, title, and interest in and to the '598 patent and

possesses all rights of recovery.  A true and correct copy of the '598 patent is attached hereto as Exhibit 7.

50.     The '598 patent generally claims a method for configuring monitoring devices through a central interface in an integrated information system in communication with monitoring devices, involving obtaining from a common user interface user-selections of a client associated with the integrated information system, a premises associated with the client, a location associated with an identifiable attribute of said premises, a monitoring device associated with the location, and a processing rule associated with the monitoring device; and configuring the system according to the user selections.

51.     The '598 patent is generally directed to technological improvements in configuring devices from a common user interface. The '598 patent allows flexibility in configuring and incorporating diverse types of devices within a system. For example, the '598 patent provides a common interface whereby users may make various selections such that the diverse devices may be incorporated and operated within one system.

52.     United States Patent No. 8,193,932 ("the '932 patent"), titled "Alerting based on temporospatial criteria," was duly and lawfully issued on June 5, 2012.  Vivint is the owner of all rights, title, and interest in and to the '932 patent and possesses all rights of recovery.  A true and correct copy of the '932 patent is attached hereto as Exhibit 8.

53.     The '932 patent generally claims a method for processing an alert, involving receiving a specification of a first location and a time specification, creating an alert, associating the first location and time specifications with the alert, determining a current time and that the current time matches the time specification, later determining a first current location and determining that it does not match the first location specification, later determining a second

13

current location and determining that it does match the first location specification, and presenting information related to the alert.

54.     The '932 patent is generally directed to technological improvements in location-based and time-based alerting. The '932 patent improves notification technology by use of location and timing data. For example, users may configure notifications such that, when location and timing parameters are satisfied in a particular manner, the user receives notification.

55.     United States Patent No. 8,698,622 ("the '622 patent"), titled "Alerting based on location, region, and temporal specification," was duly and lawfully issued on April 15, 2014.  Vivint is the owner of all rights, title, and interest in and to the '622 patent and possesses all rights of recovery.  A true and correct copy of the '622 patent is attached hereto as Exhibit 9.

56.     The '622 patent generally claims a method involving determining, by a device with a processor, whether a current time is within a time specification defined in an alert, whether a second location is outside a radius of a first location defined in the alert, and whether a later-determined third location is within the radius of the first location; and, if yes to each, the device sending an indication that the alert has been triggered.

57.     The '622 patent is generally directed to technological improvements in location-based altering. The '622 patent improves notification technology by use of location data coupled with timing. For example, users may configure notifications such that when location involving movement and timing parameters are satisfied, the user receives a notification.

58.     United States Patent No. 9,767,631 ("the '631 patent"), titled "Garage door status and control via a security system," was duly and lawfully issued on September 19, 2017.  Vivint is the owner of all rights, title, and interest in and to the '631 patent and possesses all rights of recovery.  A true and correct copy of the '631 patent is attached hereto as Exhibit 10.

14

59.     The '631 patent generally claims a centralized garage door control and management method involving an automation and security system control panel receiving a current state of a garage door from a sensor coupled to the control panel and determining instructions to change the garage door state based on the current state and a state change request; and a garage door control peripheral receiving said instructions as a garage control command, converting said command to facilitate communication between the control panel and a legacy garage door opener, transmitting said instructions to said legacy opener, and conveying an audible alert adjacent to the garage door prior to, during, or after a garage door state change based on the garage control command.

60.     The '631 patent is generally directed to technological improvements in smart home device control, particularly garage doors. For example, the '631 patent improves control over specific devices within the home, particularly garage doors. Through the '631 patent, users may incorporate a peripheral device with a garage door opener and incorporate such a device within the existing ecosystem of the smart home, allowing for control of all devices, including garage doors from an interface.

61.     United States Patent No. 9,972,181 ("the '181 patent"), titled "Chronological activity monitoring and review," was duly and lawfully issued on May 15, 2018.  Vivint is the owner of all rights, title, and interest in and to the '181 patent and possesses all rights of recovery.  A true and correct copy of the '181 patent is attached hereto as Exhibit 11.

62.     The '181 patent generally claims a method for monitoring activity involving receiving visual data from a camera at a location, receiving first and second non-visual data from different first and second activity detectors at the location, and outputting a chronology depicting

15

at least a portion of said visual data and first and second timelines representing the first and second non-visual data.

63. The '181 patent is generally directed to technological improvements in correlating non-visual events with recorded visual data. For example, the '181 patent provides indicators from non-video data (such as door/window sensors) to be displayed chronologically with video data using timelines. Such an improvement allows users to navigate video feeds for relevant events.

64. United States Patent No. 10,133,935 ("the '935 patent"), titled "Doorbell camera early detection," was duly and lawfully issued on November 20, 2018. Vivint is the owner of all rights, title, and interest in and to the '935 patent and possesses all rights of recovery. A true and correct copy of the '935 patent is attached hereto as Exhibit 12.

65. The '935 patent generally claims an apparatus for visitor detection using security and/or automation systems, including a processor and a memory storing processor-executable instructions to initiate capturing a first plurality of images of a doorway prior to person detection and doorbell actuation, and to detect whether a threshold period has elapsed between said initiating and detecting doorbell actuation; wherein, if the period has elapsed, the first plurality of doorway images is overwritten and deleted after the period has elapsed, and capturing a second plurality of doorway images is initiated; and whereas, if the period has not elapsed, a person located at a predetermined distance from the doorbell is detected using biometric identification methods, doorbell actuation is subsequently detected, a subset of images (of one or more images) from the first plurality is selected that includes images captured between person detection and doorbell actuation, a first doorway image associated with the detected person is identified from the subset, a second image and a video each associated with doorbell actuation are captured, the

16

first image is delivered to a recipient for viewing with a notice of the detected person, and the video is automatically uploaded for selective viewing by the recipient.

66.     The '935 patent is generally directed to technological improvements in early capture of recorded video data even before a doorbell actuation and notifying users accordingly. The '935 patent further provides saved video data in a manner that users can view recorded video clips in context of the detected event such as a doorbell interaction. The '935 patent provides the technological improvement of providing this context based captured images and video data to users.

67.     United States Patent No. 10,242,517 ("the '517 patent"), titled "Garage door status and control via a security system," was duly and lawfully issued on March 26, 2019.  Vivint is the owner of all rights, title, and interest in and to the '517 patent and possesses all rights of recovery.  A true and correct copy of the '517 patent is attached hereto as Exhibit 13.

68.     The '517 patent generally claims a garage door control peripheral that includes a processor and a memory storing processor-executable instructions to receive status information from a garage door system control, to transmit said information to a control panel, to receive information from the control panel, to identify said information as command information including instructions for the garage door system control to adjust a garage door status, and to transmit the command information to the garage door system control, wherein the transmitting of command and status information each involves converting the information to facilitate communication between the garage door system control and the control panel.

69.     The '517 patent is generally directed to technological improvements in smart home device control, particularly garage doors. For example, the '517 patent improves control over specific devices within the home, specifically garage doors. Through the '517 patent, users

17

may incorporate a peripheral device with a garage door opener and incorporate such a device within the existing garage door system and the ecosystem of the smart home, allowing for control of all devices, including garage doors from an interface.

70.     United States Patent No. 10,347,172 ("the '172 patent"), titled "White or off-white hidden display apparatus, system, and method," was duly and lawfully issued on July 9, 2019.  Vivint is the owner of all rights, title, and interest in and to the '172 patent and possesses all rights of recovery.  A true and correct copy of the '172 patent is attached hereto as Exhibit 14.

71.     The '172 patent generally claims a hidden graphical display apparatus for an automation and/or security system, including a projection layer positioned behind a face layer, wherein the face layer includes a back side and a front side, the latter having a first area for displaying high resolution images and a second area made of the same material and positioned therearound; wherein the projection layer includes a light source that operates in active and inactive modes; and wherein, in active mode, the projection layer projects white light from the light source to the face layer's back side to display white high resolution images against a white background in the first area, whereas, in inactive mode, the projection layer visually obscures the face layer so that the first and second areas together display a colored surface hiding the projection layer.

72.     The '172 patent is generally directed to technological improvements in thermostat displays. For example, the '172 patent teaches how to display high resolution images through an otherwise opaque projection layer. This improvement allows thermostats to blend into a wall when not active, only drawing attention when a user wants to interact with the thermostat, and providing a high resolution image when in use.

## ALARM.COM AND ADT'S INFRINGING SYSTEMS AND SERVICES

73.     Alarm.com provides and enables smart home security systems and services. These include, as an example, a security panel or panel/gateway (collectively "panel") that communicates with various sensors or devices within the home. The devices and sensors within the home send information to the security panel, which then sends data to a backend server in control of the smart home system. Users of the smart home security system interact with the system either through the panel or through a remote interface such as a website/web-portal (e.g., Alarm.com or ADT's website/web-portal) or Alarm.com or ADT applications available through Apple and Google app stores ("Alarm.com App," "ADT Control App," and "ADT Pulse App")). Through the remote interfaces, users may receive notifications regarding the devices within the home or may control the various devices within the home. Alarm.com enabled and ADT smart home security products and services include at least the following devices: cameras, video doorbells, thermostats, lights, door locks, garage door controllers, security panels, plugs, outlets, switches, motion sensors, door sensors, door locks, and others. Alarm.com enables the functionality with these devices through its backend platform as well as firmware on the panel. Alarm.com advertises the functionality of these devices on its website:



74.     Alarm.com enabled system and associated services including the security panel, interfaces, devices, backend services, and monitoring services provided by Alarm.com and its Dealers (such as ADT) are the "Accused Systems."

75.     Alarm.com sells the Accused Systems to a network of "Dealers." Dealers sell and install security systems in users' homes. Dealers generally obtain equipment from Alarm.com for use within the Alarm.com enabled system, and, as part of their home security and automation offering, also may offer additional devices/services not provided by Alarm.com. Dealers typically collect monthly payments from users for use of the Accused Systems. Dealers compensate Alarm.com for use of the Accused Systems with servicing provided to customers.

76.     On information and belief, ADT is Alarm.com's largest Dealer or among its largest. ADT sells and installs accused security systems in customers' homes.  ADT's versions of the Accused Systems are branded as "ADT Control" (or "ADT Command and Control") and "ADT Pulse." On information and belief, Alarm.com, as part of its acquisition of certain assets related to a business unit of Icontrol Networks, Inc. ("ICN"), acquired the assets of the ICN business providing a backend platform for the ADT Pulse.  The Accused Systems include the

20

ADT Control and ADT Pulse systems, as enabled with the Alarm.com backend platform including Alarm.com's ownership of the ICN business providing a backend platform for the ADT Pulse.[7]

77.     On information and belief, while Alarm.com may provide non-material changes of the Accused Systems for different Dealers (e.g., logo and other branding), the Accused Systems are substantively the same in relevant respects among Alarm.com's Dealers for purposes of the present counterclaims.

78.     As detailed more specifically below, Alarm.com is a direct and indirect infringer of one or more claims of each of the Vivint Asserted Patents by making, using, selling, offering for sale in the United States, and/or importing into the United States, the Accused Systems through its Dealers to customers.

79.     As detailed more specifically below, ADT is also a direct and indirect infringer of one or more claims of each of the Vivint Patents (excluding the '172 patent) by making, using, selling, offering for sale in the United States, and/or importing into the United States, the Accused ADT Systems to its customers.

80.     On information and belief, Alarm.com, by agreements with each of its Dealers (including ADT), directs and controls the acts of each of its Dealers (including ADT) and their performance of all limitations in asserted claims where not directly performed by Alarm.com, if any.

81.     To the extent Alarm.com does not control each feature provided in connection with providing Accused Systems, on information and belief, Alarm.com has entered into a joint

---

[7] Upon information and belief, Plaintiff ICN Acquisition, LLC is not a practicing entity. Therefore, Vivint has not named ICN Acquisition in the present counterclaims concerning infringement of the Vivint Asserted Patents.

enterprise with each of its Dealers (including ADT) by at least: (1) entering into an agreement

governing the services provided by Alarm.com to Dealers (including ADT); (2) sharing the

common purpose of providing Alarm.com's services to customers in furtherance of the smart

home business; (3) sharing a community of pecuniary interest in the common purpose of

providing Alarm.com's services to customers in furtherance of the smart home business; and (4)

to the extent the Dealers (including ADT) share control over the services provided by Alarm.com

in connection with the smart home services, sharing an equal right to a voice in the direction of

the enterprise, which gives an equal right of control.

## **FIRST COUNTERCLAIM**

### **(Infringement of U.S. 6,829,478)**

82.    By this reference, Vivint realleges and incorporates the foregoing paragraphs of

its counterclaims as though fully set forth here.

83.    The Counterclaim Defendants have infringed one or more claims of the '478

patent (see Exhibit 6 attached hereto), in violation of 35 U.S.C. § 271, either literally or through

the doctrine of equivalents, by making, using, selling, or offering for sale in the United States,

and/or importing into the United States, without authorization products and/or methods

practicing one or more claims of the '478 patent. In particular, Counterclaim Defendants have

provided and/or operated the Accused Systems in an infringing manner as described in more

detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The

Counterclaim Defendants are liable for their infringement of the '478 patent pursuant to 35

U.S.C. §§ 271(a), (b), and (c).

84.    For example, the Counterclaim Defendants infringe at least claim 18, which

recites:

18. A method of routing information to one or more recipients comprising the steps of:

a) receiving information from a monitoring system;

b) storing one or more user profiles, each of the one or more user profiles comprising one or more specified notification contact data entries and a specified notification contact flow sequence;

c) selecting a single user profile corresponding to the monitoring system

d) retrieving the selected single user profile;

e) extracting from the selected single user profile the one or more specified notification contact data entries and the specified notification contact flow sequence;

f) identifying from each of the one or more notification contact data entries one or more communication receiving devices and for each such device a device-specific format, each of said communication receiving devices being configured both to receive messages in device-specific formats and to transmit a response message back to the information monitoring network;

g) generating from the information received from the monitoring system and from each of the one or more notification contact data entries one or more interactive event notifications, each in a device-specific format corresponding to each of the one or more configured communication receiving devices;

h) transmitting said one or more interactive event notifications in device-specific formats to each of the one or more configured communication receiving devices either sequentially or simultaneously according to the specified notification contact flow sequence;

i) receiving from each of the one or more communication receiving devices, either sequentially or simultaneously according to the specified notification contact flow sequence, additional information or instructions containing specified subsequent actions to be taken by the network;

j) altering the specified notification contact flow sequence according to the specified subsequent actions contained in the additional information or instructions received from each of the one or more configured communication receiving devices; and

carrying out subsequent actions to be taken by the network according to the altered specified notification contact flow sequence.

85.     The Accused Systems carry out the recited steps of claim 18.  The Alarm.com

backend platform of the Accused Systems stores user profiles associated with installed security

systems, and stores contact information for users during alarm events, where the system accesses

a defined order of contacts. During an alarm event, the Alarm.com backend platform receives

information from a monitoring system, such as alarm event information from a user's security

23

system, access a user profile associated with that security system, and transmit notifications to specified contacts according to a contact flow sequence.





86.    Upon an occurrence of an alarm event, the Alarm.com backend platform sends an interactive event notification to the specified contacts. For example, the Alarm.com backend platform sends such notifications to a user's mobile device having an Alarm.com App running thereon, which allows users to, among other things, confirm or verify the alarm event. The interactive event notification is in a device-specific format, such as for a mobile device running Apple iOS or Google Android.



https://www.alarmgrid.com/faq/how-does-the-alarm-com-in-app-alarm-cancel-verify-feature-work

87.     The Accused Systems receive information containing actions to be taken, such as related to canceling or verifying an alarm.

88.     As another example, the Accused ADT System sends interactive text messages to specified users, and the Accused ADT System collects information relating to the detected alarm event such as a verification or cancellation of the alarm:



https://newsroom.adt.com/safe-stories/adt-modernizes-professional-security-monitoring-smart-home-era

25

89.     On information and belief, based on information received by the Accused ADT System, the Accused ADT System alters the designated contact flow sequence.

90.     In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 18) of the '478 patent.

91.     Alarm.com has also indirectly infringed one or more claims (including, at least, claim 18) of the '478 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '478 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

92.     Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 18) of the '478 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '478 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '478 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

93.     In addition, ADT has indirectly infringed one or more claims (including, at least, claim 18) of the '478 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '478 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or

26

documentation, technical support, and online knowledgebase) on using the Accused ADT

Systems in an infringing manner.

94.     Further, ADT also has indirectly infringed one or more claims (including, at least,

claim 18) of the '478 patent under 35 U.S.C. § 271(c) by selling or offering to sell the

components of the Accused ADT System that constitute a material part of the inventions claimed

in the '478 patent, knowing that such components are especially made or especially adapted for

uses that infringe the '478 patent, and not a staple article or commodity of commerce suitable for

substantial non-infringing use.

95.     Vivint has been damaged by these acts of infringement. Vivint has suffered

damages and is entitled to recover from Counterclaim Defendants damages adequate to

compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be

determined including any further relief, such as compensatory or equitable, as deemed proper

and just by the Court.

96.     Alarm.com has had actual knowledge of the '478 patent since at least August

2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired,

including the '478 patent.

97.     Despite having actual knowledge, Alarm.com has continued to carry out

infringing activities.  Alarm.com has had actual knowledge, or at least constructive knowledge,

of the '478 patent.  Alarm.com knew, or was willfully blind, to the existence of the '478 patent

and associated infringement thereof.

98.     Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three

times the amount found or assessed, because as outlined herein Alarm.com's infringement has

been willful and deliberate.

99.     Alarm.com's willful infringement of the '478 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## SECOND COUNTERCLAIM

### (Infringement of U.S. 6,727,811)

100.     By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

101.     The Counterclaim Defendants have infringed one or more claims of the '811 patent (see Exhibit 4 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '811 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '811 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

102.     For example, the Counterclaim Defendants infringe at least claim 15 of the '811 patent, which recites:

> 15. A method of monitoring a site, including the steps of:
>
> monitoring said site for the occurrence of at least one predetermined alarm condition;
>
> responding to said alarm condition by capturing at the site a packet of alarm data pertaining to the alarm condition;
>
> forwarding the packet of alarm data to a location which is remote from said site;

electronically receiving and evaluating at the location said packet of alarm data to determine whether or not said packet of alarm data is indicative of a false alarm condition; and

transmitting, if said alarm data is not indicative of the false alarm condition, said packet of alarm data to a user or users.

103.    The Accused Systems, such as provided and/or operated by Alarm.com and ADT, carry out the steps of claim 15.  Stated generally, Accused Systems include "crash and smash" protection in a manner that meets claim 15.  In the Accused Systems, when a door of a house having a security system is opened, a panel sends data relating to that event, in packet form, to the Alarm.com backend system.

104.    On information and belief, the Alarm.com backend system evaluates incoming packet information concerning the event to determine if a potential crash and smash event has occurred.  See https://alarm.com/resources/crash-smash-security; https://www.youtube.com/watch?v=vWelaYFGZpg.

105.    For example, if the Alarm.com backend system receives information of the door being opened and does not receive subsequent data indicating that the system has been disarmed, then the Alarm.com backend system will forward a notification of a potential crash and smash event to a user. See https://alarm.com/resources/crash-smash-security; https://www.youtube.com/watch?v=vWelaYFGZpg.

106.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 15) of the '811 patent.

107.    Alarm.com has also indirectly infringed one or more claims (including, at least, claim 15) of the '811 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing

infringement of the '811 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

108.    Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 15) of the '811 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '811 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '811 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

109.    In addition, ADT has indirectly infringed one or more claims (including, at least, claim 15) of the '811 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '811 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

110.    Further, ADT also has indirectly infringed one or more claims (including, at least, claim 15) of the '811 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '811 patent, knowing that such components are especially made or especially adapted for uses that infringe the '811 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

111.     Vivint has been damaged by these acts of infringement. Vivint has suffered

damages and is entitled to recover from Counterclaim Defendants damages adequate to

compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be

determined including any further relief, such as compensatory or equitable, as deemed proper

and just by the Court.

112.     Alarm.com has had knowledge of the '811 patent since at least August 2014. By

letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the

'811 patent.

113.     Despite having actual knowledge, Alarm.com has continued to carry out

infringing activities.  Alarm.com has had actual knowledge, or at least constructive knowledge,

of the '811 patent.  Alarm.com knew, or was willfully blind, to the existence of the '811 patent

and associated infringement thereof.

114.     Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three

times the amount found or assessed, because as outlined herein Alarm.com's infringement has

been willful and deliberate.

115.     Alarm.com's willful infringement of the '811 patent as outlined herein renders

this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result,

pursuant to 35 U.S.C. § 285.

## THIRD COUNTERCLAIM

### (Infringement of U.S. 9,972,181)

116.     By this reference, Vivint realleges and incorporates the preceding paragraph nos.

1-81 as though fully set forth here.

117.     The Counterclaim Defendants have infringed and continue to infringe one or more claims of the '181 patent (see Exhibit 11 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '181 patent. In particular, Counterclaim Defendants have and continue to provide and/or operate the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '181 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

118.     For example, the Counterclaim Defendants infringe at least claim 1 of the '181 patent, which recites:

> 1. A method for monitoring activity, comprising:
>
> receiving visual data from a camera at a location;
>
> receiving first non-visual data from a first activity detector at the location;
>
> receiving second non-visual data from a second activity detector different from the first activity detector at the location;
>
> outputting a chronology depicting at least a portion of the visual data, a first timeline representing the first non-visual data, and a second timeline representing the second non-visual data.

119.     Accused Systems, such as provided and operated by Counterclaims Defendants, include outdoor cameras, such as the ADC-724 camera, mounted at a home and that provide video (visual) data.

120.     The Accused Systems also receive non-visual data from a number of activity detectors, e.g., from sensors installed in the home, such as motion sensors, door/window sensors,

garage door sensors, door locks, and lights.  As one example, a motion sensor provides first non-visual data, and a door/window sensor provides second non-visual data.

121.    The Accused Systems provide a displayed output (viewable, for example, on a Web browser) including a chronology that depicts at least some of the video data, a first timeline representing the motion sensor data and a second timeline representing the door/window sensor data. An example of such an output is depicted below:



122.    On information and belief, the ADC-724 is compatible with the Accused ADT Systems. On information and belief ADT has sold the ADC-724 camera for use within Accused ADT Systems.

123.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 1) of the '181 patent.

124.    Alarm.com has also indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '181 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '181 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

125.    Further, Alarm.com also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '181 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '181 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '181 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

126.    In addition, ADT has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '181 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '181 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

127.    Further, ADT also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '181 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '181 patent, knowing that such components are especially made or especially adapted for uses that infringe the '181 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

128.    Alarm.com and ADT knew at least as early as the filing of these counterclaims that, through its encouragement, the Accused Systems would result in infringement of one or more claims of the '181 patent.

129.     Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

130.     Alarm.com and ADT knew at least as early as the filing of these counterclaims that, through its encouragement, the Accused Systems would result in infringement of one or more claims of the '181 patent.

131.     Despite having actual knowledge, Alarm.com and ADT have continued to carry out infringing activities.  Alarm.com and ADT have had actual knowledge, or at least constructive knowledge, of the '181 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '181 patent and associated infringement thereof.

132.     Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

133.     Alarm.com's and ADT's willful infringement of the '181 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## FOURTH COUNTERCLAIM

### (Infringement of U.S. 9,767,631)

134.     By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

135.    The Counterclaim Defendants have infringed and continue to infringe one or more claims of the '631 patent (see Exhibit 10 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '631 patent. In particular, Counterclaim Defendants have and continue to provide and/or operate the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '631 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

136.    For example, the Counterclaim Defendants infringe at least claim 1 of the '631 patent, which recites:

> 1. A centralized garage door control and management method, comprising:
>
> receiving, at a control panel of an automation and security system, a current state of a garage door from a sensor directly coupled with the control panel, wherein the control panel is communicatively coupled to a garage door control peripheral and one or more security sensors;
>
> determining, at the control panel, direct instructions to change a state of the garage door based at least in part on a change of state request and the current state of the garage door;
>
> receiving, at the garage door control peripheral, a garage control command comprising the direct instructions from the control panel;
>
> converting, at the garage door control peripheral, the garage control command to facilitate communication between the control panel and a legacy garage door opener coupled to the garage door control peripheral;
>
> transmitting, by the garage door control peripheral, the direct instructions to the legacy garage door opener; and
>
> conveying, by the garage door control peripheral, an audible alert adjacent to the garage door at least one of prior to, during, or after a garage door change of state based at least in part on the garage control command.

36

137.    Counterclaim Defendants offer Accused Systems that include a panel and a garage door control peripheral device that enables the system to cooperate with a legacy garage door opener to open or close the garage door.

138.    Such Accused Systems send commands from the panel (which may originate from an application on a mobile phone), whereby the Accused Systems send a command including direct instructions from the panel to the control peripheral, which communicates with a legacy garage door opener to open or close the garage door.

139.    The garage door peripheral will convey a beeping sound indicating that the garage door is about to close.

140.    Accused ADT Systems are offered with z-wave enabled garage door control peripherals. Such z-wave garage door peripherals communicate with the ADT panel via z-wave protocols.  *See* https://www.adt.com/help/devices/garage-door-controller-command-portal.



141.    In the Accused ADT Systems with garage door control, commands for garage door control are passed from the ADT panel to the z-wave controller. The z-wave controller sends direct instructions to the garage door opener to open or close a garage door.

142.    The z-wave peripheral will convey a sound indicating the door is closing.

37

143.     In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 1) of the '631 patent.

144.     Alarm.com has also indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '631 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '631 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

145.     Further, Alarm.com also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '631 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system components that constitute a material part of the inventions claimed in the '631 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '631 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

146.     In addition, ADT has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '631 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '631 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

147.    Further, ADT also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '631 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '631 patent, knowing that such components are especially made or especially adapted for uses that infringe the '631 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

148.    Alarm.com and ADT knew at least as early as the filing of these counterclaims that, through its encouragement, the Accused Systems would result in infringement of one or more claims of the '631 patent.

149.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

150.    Despite having actual knowledge, Alarm.com and ADT have continued to carry out infringing activities.  Alarm.com and ADT have had actual knowledge, or at least constructive knowledge, of the '631 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '631 patent and associated infringement thereof.

151.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

152.     Alarm.com's and ADT's willful infringement of the '631 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

### FIFTH COUNTERCLAIM

### (Infringement of U.S. 10,242,517)

153.     By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

154.     The Counterclaim Defendants have infringed and continue to infringe one or more claims of the '517 patent (see Exhibit 13 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '517 patent. In particular, Counterclaim Defendants have and continue to provide and/or operate the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '517 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

155.     For example, the Counterclaim Defendants infringe at least claim 17 of the '517 patent, which recites:

> 17. A garage door control peripheral, comprising:
>
> a processor;
>
> a memory in electronic communication with the processor; and
>
> instructions stored in the memory, the instructions being executable by the processor to:
>
> receive status information from a garage door system control;

transmit the status information to a control panel communicatively coupled to the garage door peripheral;

receive information from the control panel;

identify the received information as command information of the control panel, the command information comprising direct instructions for the garage door system control to adjust an operable status of at least one garage door based at least in part on the status information; and

transmit the command information to the garage door system control,

wherein transmitting the command information and transmitting the status information comprises converting the command information and the status information to facilitate communications between the garage door system control and the control panel.

156.    Counterclaim Defendants offer Accused Systems that include a panel and a garage door control peripheral device that enables the home system to open or close the garage door.

157.    Such Accused Systems send commands from the panel (which may originate from an application on a mobile phone), whereby the Accused Systems send command information from the panel to the control peripheral for opening or closing the garage door.

158.    The control peripheral will send the command information from the Accused System to the garage door opener.

159.    The status of the garage door (e.g., open or closed) is received by the panel of the Accused System.

160.    Accused ADT Systems are offered with z-wave enabled garage door control peripherals. Such z-wave garage door control peripherals communicate with the ADT panel via z-wave protocols. *See* https://www.adt.com/help/devices/garage-door-controller-command-portal.



161.    In the Accused ADT Systems with garage door control, commands for garage door control are passed from the ADT panel to the z-wave controller. The z-wave controller sends command information including direct instructions for the garage door opener to open or close a garage door.

162.    The z-wave controller transmits status information regarding the garage door (such as the open or closed state) to the ADT panel and the Accused ADT System.

163.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 17) of the '517 patent.

164.    Alarm.com has also indirectly infringed and continues to so infringe one or more claims (including, at least, claim 17) of the '517 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '517 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

42

165.     Further, Alarm.com also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 17) of the '517 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system components that constitute a material part of the inventions claimed in the '517 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '517 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

166.     In addition, ADT has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 17) of the '517 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '517 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

167.     Further, ADT also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 17) of the '517 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '517 patent, knowing that such components are especially made or especially adapted for uses that infringe the '517 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.     Alarm.com and ADT knew at least as early as the filing of these counterclaims that, through its encouragement, the Accused Systems would result in infringement of one or more claims of the '517 patent.

169.     Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to

43

compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

170.     Despite having actual knowledge, Alarm.com and ADT have continued to carry out infringing activities.  Alarm.com and ADT have had actual knowledge, or at least constructive knowledge, of the '517 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '517 patent and associated infringement thereof.

171.     Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

172.     Alarm.com's and ADT's willful infringement of the '517 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## SIXTH COUNTERCLAIM

### (Infringement of U.S. 8,698,622)

173.     By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

174.     The Counterclaim Defendants have infringed and continue to infringe one or more claims of the '622 patent (see Exhibit 9 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '622 patent. In particular, Counterclaim Defendants have and continue to provide and/or operate the Accused Systems in an infringing

44

manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '622 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

175.    For example, the Counterclaim Defendants infringe at least claim 1 of the '622 patent, which recites:

> 1. A method, comprising:
>
> determining, by a device comprising a processor, whether a current time is within a time specification defined in an alert, a second location is outside of a radius of a first location defined in the alert, and a third location determined after the second location is within the radius of the first location; and
>
> in response to determining that the current time is within the time specification, the second location is outside of the radius, and third location is within the radius, sending, by the device, an indication that the alert has been triggered.

176.    Accused Systems include geofencing features called "Places" whereby the Alarm.com backend platform will learn various radii centered around map locations.  An exemplary radius is depicted below:



177.    The Alarm.com backend platform of the Accused Systems collects location information to determine current locations of a user's mobile device. When the user moves from a location outside the geofence to a location inside the geofence, a notification may be sent if also within the designated time schedule for the notification.

178.    For example, the Accused Systems may be configured to send a notification if entering a geofence and a lock is unlocked during a certain time schedule:



179.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (including, at least, claim 1) of the '622 patent.

46

180.     Alarm.com has also indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '622 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '622 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

181.     Further, Alarm.com also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '622 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '622 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '622 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

182.     In addition, ADT has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '622 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '622 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

183.     Further, ADT also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '622 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '622 patent, knowing that such components are especially made or

47

especially adapted for uses that infringe the '622 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

184.    Alarm.com has had knowledge of the '622 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '622 patent.

185.    On information and belief, ADT has had knowledge of the patent family for the '622 at least as early as June 2, 2015, when Vivint filed Case No. 2:15-cv-00392 against Alarm.com in the District Court for the State of Utah, alleging, *inter alia*, infringement of U.S. Patent No. 7,884,713 which is in the same patent family.  Upon information and belief, as a major business partner and whose security systems would be at issue, ADT would have become aware of the lawsuit and the patents involved when it was filed.

186.    Despite having actual knowledge, Alarm.com and ADT have continued to carry out infringing activities.  Alarm.com and ADT have had actual knowledge, or at least constructive knowledge, of the '622 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '622 patent and associated infringement thereof.

187.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

188.    Alarm.com's and ADT's willful infringement of the '622 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## SEVENTH COUNTERCLAIM

### (Infringement of U.S. 8,193,932)

189.    By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

190.    The Counterclaim Defendants have infringed and continue to infringe one or more claims of the '932 patent (see Exhibit 8 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '932 patent. In particular, Counterclaim Defendants have and continue to provide and/or operate the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '932 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

191.    For example, the Counterclaim Defendants infringe at least claim 1 of the '932 patent, which recites:

1. A method for processing an alert, comprising:

receiving a specification of a first location;

receiving a time specification;

creating an alert;

associating the specification of the first location and the time specification with the alert;

determining a current time;

determining that the current time matches the time specification;

determining a first current location as a second location, wherein determining the second location follows receiving the specification of the first location and precedes determining a third location;

determining that the second location does not match the specification of the first location;

determining a second current location as the third location;

determining that the third location matches the specification of the first location; and

presenting information relating to the alert.

192.    Accused Systems include geofencing features called "Places" whereby the Alarm.com will learn various radii centered around map locations such as the radius depicted below:



193.    The Alarm.com backend system of the Accused Systems will collect location information to determine current locations of a user's mobile device. The Alarm.com backend system will continue to monitor the current location until the current location matches the designated radius within the system (the geofence).

194.    Once the location data matches the designated geofence, and within a specified time frame, the Accused Systems will present information such as a notification.

50

195.    For example, a notification may be configured such that the Accused Systems will send a notification if a user exits a geofence during a specified timeframe and the system has not been armed:



196.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (including, at least, claim 1) of the '932 patent.

197.    Alarm.com has also indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '932 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '932 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers

(for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

198.    Further, Alarm.com also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '932 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '932 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '932 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

199.    In addition, ADT has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '932 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '932 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

200.    Further, ADT also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '932 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '622 patent, knowing that such components are especially made or especially adapted for uses that infringe the '932 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

201.    Alarm.com has had knowledge of the '932 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '932 patent.

202.    On information and belief, ADT has had knowledge of the patent family for the '622 at least as early as June 2, 2015, when Vivint filed Case No. 2:15-cv-00392 against Alarm.com in the District Court for the State of Utah, alleging, *inter alia*, infringement of U.S. Patent No. 7,884,713 which is in the same patent family.  Upon information and belief, as a major business partner and whose security systems would be at issue, ADT would have become aware of the lawsuit and the patents involved when it was filed.

203.    Despite having actual knowledge, Alarm.com and ADT have continued to carry out infringing activities.  Alarm.com and ADT have had actual knowledge, or at least constructive knowledge, of the '932 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '932 patent and associated infringement thereof.

204.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

205.    Alarm.com's and ADT's willful infringement of the '932 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## **EIGTH COUNTERCLAIM**

### **(Infringement of U.S. 10,347,172)**

206.    By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

207.    Alarm.com has infringed and continues to infringe one or more claims of the '172 patent (see Exhibit 14 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '172 patent. In particular, has provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Alarm.com is liable for its infringement of the '172 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

208.    For example, Alarm.com infringes at least claim 1 of the '932 patent, which recites:

> 1. A hidden graphical display apparatus for an automation and/or security system, comprising:
>
> a face layer and a projection layer, the projection layer positioned behind the face layer;
>
> the face layer comprising a front side and a back side, the front side comprising a first area configured to display high resolution images and a second area positioned around the first area, wherein the first area and the second area are comprised of the same material;
>
> the projection layer comprising a light source configured to operate in an active mode and an inactive mode, wherein:
>
> when in the active mode, the projection layer is configured to project white light from the light source to the back side of the face layer to display one or more white high resolution images in the first area, and wherein the first area other than the displayed white high resolution images comprises a white background to the displayed white high resolution images when in the active mode; and
>
> when in the inactive mode, the projection layer is configured to visually obscure the face layer so that the first area and the second area together display a colored surface hiding the projection layer.

209.    As part of the Accused Systems, Alarm.com and its Dealers sell and offer for sale the ADC-T3000 thermostat depicted below:



210.    The T3000 includes a face layer and a projection layer:



211.    The T3000 includes a high resolution OLED display screen wherein the display is

hidden when the OLED is not active, but is visible when it is active:




https://www.youtube.com/watch?v=m9YgujQ0ogs

55

212.    Alarm.com has also indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '172 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '172 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

213.    Further, Alarm.com also has indirectly infringed and continues to so infringe one or more claims (including, at least, claim 1) of the '172 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system components that constitute a material part of the inventions claimed in the '172 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '172 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

214.    Alarm.com knew at least as early as the filing of these counterclaims that, through its encouragement, the Accused Systems would result in infringement of one or more claims of the '172 patent.

215.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Alarm.com damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

216.    Despite having actual knowledge, Alarm.com has continued to carry out infringing activities.  Alarm.com has had actual knowledge, or at least constructive knowledge, of the '172 patent.  Alarm.com has known, or has been willfully blind, to the existence of the '172 patent and associated infringement thereof.

56

217.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's infringement has been willful and deliberate.

218.    Alarm.com's willful infringement of the '172 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## NINTH COUNTERCLAIM

### (Infringement of U.S. RE43,598)

219.    By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

220.    The Counterclaim Defendants have infringed one or more claims of the '598 patent (see Exhibit 7 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '598 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '598 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

221.    For example, the Counterclaim Defendants infringe at least claim 1 of the '598 patent, which recites:

> 1. In an integrated information system in communication with a number of monitoring devices, a method for configuring the monitoring devices through a central interface, the method comprising:

obtaining a user selection of at least one client associated with the integrated information system;

obtaining a user selection of at least one premises associated with the user selection of at least one client, within the integrated information system;

obtaining a user selection of at least one location wherein the user selection of at least one location is associated with an identifiable attribute of the user selection of at least one premises;

obtaining a user selection of at least one monitoring device associated with the user selection of at least one location;

obtaining a user selection of at least one processing rule associated with the user selection of at least one monitoring device; and

configuring the integrated information system according to the user selection of at least one client, premises, location, monitoring device and processing rule data;

wherein the user selection of at least one client, premises, location, monitoring device and processing rule data is obtained from a common user interface.

222.    The Accused Systems include a common user interface, such as a panel, website/web-portal interface or mobile application (e.g., Alarm.com App, ADT Command App, or ADT Pulse App), whereby the Accused Systems obtain selection of client, premises, location, monitoring device, and processing rule data.

223.    The Accused Systems interfaces collect user selections of client, premises, location, monitoring device, and processing rule data such as user login information, user permission data, home location data, selection of a monitored property (e.g., a second home), monitoring device attributes, and rule data for the Accused Systems.

224.    The Accused Systems are configured with the data obtained from the common user interface.

225.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint

enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 1) of the '598 patent.

226.    Alarm.com has also indirectly infringed one or more claims (including, at least, claim 1) of the '598 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '598 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

227.    Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 1) of the '598 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '598 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '598 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

228.    In addition, ADT has indirectly infringed one or more claims (including, at least, claim 1) of the '598 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '598 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

229.    Further, ADT also has indirectly infringed one or more claims (including, at least, claim 1) of the '598 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '598

patent, knowing that such components are especially made or especially adapted for uses that infringe the '598 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

230.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

231.    Alarm.com has had knowledge of the '598 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '598 patent.

232.    On information and belief, ADT has had knowledge of the patent family for the '598 patent at least as early as February 25, 2021, when Vivint filed Case No. 2:21-cv-00115 against ADT in the District Court for the State of Utah, alleging, *inter alia*, infringement of U.S. Patent Nos. 8,392,552 and 8,700,769, which are in the same patent family.

233.    Despite having actual knowledge, Alarm.com and ADT continued to carry out infringing activities.  Alarm.com and ADT had actual knowledge, or at least constructive knowledge, of the '598 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '598 patent and associated infringement thereof.

234.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

235.    Alarm.com's and ADT's willful infringement of the '598 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## TENTH COUNTERCLAIM

### (Infringement of U.S. 6,748,343)

236.    By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

237.    The Counterclaim Defendants have infringed one or more claims of the '343 patent (see Exhibit 5 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '343 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '343 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

238.    For example, the Counterclaim Defendants infringe at least claim 1 of the '343 patent, which recites:

1. An integrated information system comprising:

one or more monitoring devices operable to obtain and transmit monitoring data corresponding to a specified premises;

at least one processing server operable to communicate with the one or more monitoring devices, wherein the processing server is further operable to configure each monitoring device; and

a computer display operable to generate a user interface for obtaining a user selection of client, premises, location, monitoring device, and processing rule data and to transmit the data to the processing server;

wherein the processing server configures the monitoring devices according to the client, premises, location, monitoring device and processing rule data obtained from the user interface.

239.    The Accused Systems include a computer display that is operable to generate an interface, such as a panel, website/web-portal interface or mobile application (e.g., Alarm.com App, ADT Command App, or ADT Pulse App), whereby the Accused Systems obtain selection of client, premises, location, monitoring device, and processing rule data.

240.    The Alarm.com system interfaces collect user selections of client, premises, location, monitoring device, and processing rule data such as user login information, user permission data, home location data, selection of a monitored property (e.g., a second home), monitoring device attributes, and rule data for the Accused Systems.

241.    The Accused Systems include a server, such as the Alarm.com backend platform, that configure monitoring devices of a given security system of a specified user with the obtained data from the common user interface.

242.    In the alternative, for direct infringement purposes, Alarm.com either controls the aspects of the ADT system (or Other Dealers system) or operates in a joint enterprise with ADT (or Other Dealers) to directly infringe one or more claims (e.g., claim 1) of the '343 patent.

243.    Alarm.com has also indirectly infringed one or more claims (including, at least, claim 1) of the '343 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '343 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

62

244.    Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 1) of the '343 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '343 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '343 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

245.    In addition, ADT has indirectly infringed one or more claims (including, at least, claim 1) of the '343 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '343 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

246.    Further, ADT also has indirectly infringed one or more claims (including, at least, claim 1) of the '343 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '343 patent, knowing that such components are especially made or especially adapted for uses that infringe the '343 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

247.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

248.     Alarm.com has had knowledge of the '343 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '343 patent.

249.     ADT has had knowledge of the patent family for the '343 patent at least as early as February 25, 2021, when Vivint filed Case No. 2:21-cv-00115 against ADT in the District Court for the State of Utah, alleging, *inter alia*, infringement of U.S. Patent Nos. 8,392,552 and 8,700,769, which are in the same patent family.

250.     Despite having actual knowledge, Alarm.com and ADT continued to carry out infringing activities.  Alarm.com and ADT had actual knowledge, or at least constructive knowledge, of the '343 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '343 patent and associated infringement thereof.

251.     Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

252.     Alarm.com's and ADT's willful infringement of the '343 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## ELEVENTH COUNTERCLAIM

### (Infringement of U.S. 6,160,477)

253.     By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

254.     The Counterclaim Defendants have infringed one or more claims of the '477 patent (see Exhibit 1 attached hereto), in violation of 35 U.S.C. § 271, either literally or through

the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '477 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '477 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

255.    For example, the Counterclaim Defendants infringe at least claim 5 of the '477 patent, which recites:

> 1. A method of monitoring multiple pieces of remote equipment comprising the steps of:
>
> a) determining respective states of at least one parameter of each one of the multiple pieces of remote equipment;
>
> b) communicating information indicative of the respective states from the multiple pieces of remote equipment to a communication substation;
>
> c) communicating messages regarding the respective states from the communication substation to a computer server as incoming messages;
>
> d) enabling a user to remotely configure or modify a user-defined message profile containing outgoing message routing instructions, the user-defined message profile being storable at the computer server,
>
> e) determining whether at least one of the incoming messages is an incoming exception message indicative of improper operation of the piece of remote equipment;
>
> f) if it is determined in step e) that at least one of the incoming messages is an incoming exception message, forwarding at least one outgoing exception message based on the incoming exception message to at least one remote user-defined communication device specifiable in the user-defined message profile,
>
> wherein the user can remotely configure or modify the user-defined message profile by remotely accessing the computer server.

65

     5. A method according to claim 1, wherein step d) further comprises the step of determining whether at least one of the incoming messages is an incoming exception message or a normal status message indicative of proper operation of the piece of remote equipment to which the message pertains.

256.    The Accused Systems, such as provided and operated by Alarm.com and ADT, perform the recited steps of claim 5. For example, Accused Systems collect data from sensors related to various pieces of equipment within a home, which indicate the state of that equipment (e.g., door open, lock unlocked, etc.). Such information is collected at the home (e.g., by a panel) and provided to the Alarm.com backend platform (a server).

257.    The Accused Systems enable users to configure message profiles such that particular user devices are designated for sending notifications based on the specific notifications. The Accused Systems enable users to remotely configure such message profiles through a website/web-portal (e.g., Alarm.com's or ADT's website/web-portal) and a mobile application (e.g., Alarm.com App, ADT Command App, or ADT Pulse App).

258.    The Accused Systems will determine if incoming messages are exception messages. For example, the Alarm.com backend platform will receive a message that a device has malfunctioned. The Alarm.com backend platform will evaluate that message against a notification rule within the Alarm.com backend platform and send an appropriate notification to the user:

**System Event**

Get notified of important security and property management concerns, such as low battery and malfunction alerts.

259.    The Alarm.com backend platform will also determine the nature of the message, including if the incoming messages indicate device malfunction or are normal status messages.

66

For example, if a child disarms the home security system using his/her code, the Alarm.com backend platform will evaluate that message according to the notification rules within the Alarm.com backend platform and send an appropriate notification to the user, e.g., indicating that the system was disarmed as expected:



**Your kids have arrived home from school**

Gain peace of mind knowing that your son or daughter has arrived home from school.

260.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 5) of the '477 patent.

261.    Alarm.com has also indirectly infringed one or more claims (including, at least, claim 5) of the '477 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '477 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

262.    Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 5) of the '477 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '477 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '477 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

67

263.    In addition, ADT has indirectly infringed one or more claims (including, at least, claim 5) of the '477 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '477 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

264.    Further, ADT also has indirectly infringed one or more claims (including, at least, claim 5) of the '477 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '477 patent, knowing that such components are especially made or especially adapted for uses that infringe the '477 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

265.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

266.    Alarm.com has had knowledge of the '477 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '477 patent.

267.    On information and belief, ADT has had knowledge of the patent family for the '477 patent at least as early as June 2, 2015, when Vivint filed Case No. 2:15-cv-00392 against Alarm.com in the District Court for the State of Utah, alleging, *inter alia*, infringement of U.S.

68

Patent No. 6,147,601 which is in the same patent family. Upon information and belief, as a major business partner of Alarm.com and whose security systems would be at issue, ADT would have become aware of the lawsuit and the patents involved when it was filed.

268.    Despite having actual knowledge, Alarm.com and ADT continued to carry out infringing activities.  Alarm.com and ADT had actual knowledge, or at least constructive knowledge, of the '477 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '477 patent and associated infringement thereof.

269.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

270.    Alarm.com's and ADT's willful infringement of the '477 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## TWELFTH COUNTERCLAIM

### (Infringement of U.S. 6,211,782)

271.    By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

272.    The Counterclaim Defendants have infringed one or more claims of the '782 patent (see Exhibit 2 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '782 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more

detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '782 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

273.    For example, the Counterclaim Defendants infringe at least claim 1 of the '782 patent, which recites:

> 1. A system for monitoring at least one piece of remote equipment, comprising:
>
> at least one sensor monitoring at least one parameter of the remote equipment;
>
> a bi-directional interface unit connected to said sensors and the remote equipment, said interface unit having a message generating mechanism that generates messages based on data received from said sensor;
>
> a central computer server in communication with said interface unit, said server adapted to receive messages generated by said interface unit and said interface unit adapted to receive command messages from said server; and
>
> an Internet interface linked to said central computer server and selectively remotely accessible by users via the Internet,
>
> wherein when a user enters a command into said Internet interface, said Internet interface transmits said command messages to said central computer server and said central computer server transmits said command messages to said remote equipment, said command messages including at least one of commands to activate, commands to deactivate, and commands to alter the functioning of the remote equipment, and
>
> wherein when said sensor detects an exception condition in the remote equipment, said interface unit generates an incoming exception message and forwards said message to said server, and wherein said server forwards at least one outgoing exception message to at least one predetermined user-defined communication device based on said incoming exception message.

274.    The Accused Systems, such as provided and operated by Alarm.com and ADT, include the features recited in claim 1. The Accused Systems include sensors and other devices that monitor remote equipment.

70

275.     The Accused Systems include a bi-directional interface unit, in communication with such sensors, that sends messages to a central computer server, such as the Alarm.com backend platform.

276.     The Alarm.com backend provides a user interface via the Internet to users via a website/web-portal (e.g., Alarm.com or ADT's website/web-portal) or via a mobile application (e.g., Alarm.com App, ADT Command App, or ADT Pulse App).

277.     The Alarm.com backend platform collects command messages from the interfaces and transmits those command messages to the remote equipment. For example, command messages may include commands for a door lock to unlock, lock, or to change the pin numbers that allow the door lock to unlock.

278.     The Alarm.com backend platform will receive an exception message related to the remote equipment and forward that exception message to a predetermined communication device designated by a user. For example, if a command to lock a door lock is sent, and the door lock is unable to perform the locking, a message is sent to a user's mobile phone which indicates that the door lock was unable to lock.

279.     In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 1) of the '782 patent.

280.     Alarm.com has also indirectly infringed one or more claims (including, at least, claim 1) of the '782 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '782 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its

71

marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

281.    Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 1) of the '782 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '782 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '782 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

282.    In addition, ADT has indirectly infringed one or more claims (including, at least, claim 1) of the '782 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '782 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

283.    Further, ADT also has indirectly infringed one or more claims (including, at least, claim 1) of the '782 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '782 patent, knowing that such components are especially made or especially adapted for uses that infringe the '782 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

284.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be

determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

285.    Alarm.com has had knowledge of the '782 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '782 patent.

286.    On information and belief, ADT has had knowledge of the patent family for the '782 at least as early as June 2, 2015, when Vivint filed Case No. 2:15-cv-00392 against Alarm.com in the District Court for the State of Utah, alleging, *inter alia*, infringement of U.S. Patent No. 6,147,601 which is in the same patent family. Upon information and belief, as a major business partner of Alarm.com and whose security systems would be at issue, ADT would have become aware of the lawsuit and the patents involved when it was filed.

287.    Despite having actual knowledge, Alarm.com and ADT continued to carry out infringing activities.  Alarm.com and ADT had actual knowledge, or at least constructive knowledge, of the '782 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '782 patent and associated infringement thereof.

288.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

289.    Alarm.com's and ADT's willful infringement of the '782 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## THIRTEENTH COUNTERCLAIM

### (Infringement of U.S. 10,133,935)

290.    By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

291.    The Counterclaim Defendants have infringed and continue to infringe one or more claims of the '935 patent (see Exhibit 12 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '935 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '935 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

292.    For example, the Counterclaim Defendants infringe at least claim 11 of the '935 patent, which recites:

> 11. An apparatus for visitor detection using security and/or automation systems, comprising:
>
> a processor;
>
> memory in electronic communication with the processor; and
>
> instructions stored in the memory, the instructions being executable by the processor to:
>
> initiate capturing a first plurality of images of a doorway prior to detecting a person and prior to actuation of a doorbell;
>
> detect whether a threshold period of time has elapsed between initiating the capturing of the first plurality of images and detecting actuation of the doorbell;

if the threshold period of time has elapsed:

overwriting the first plurality of images of the doorway, the first plurality of images stored in memory associated with the security and/or automation system;

deleting the first plurality of images of the doorway after the threshold period of time has elapsed; and

initiate capturing a second plurality of images of the doorway; and

if the threshold period of time has not elapsed:

detect a presence of the person located at a predetermined distance from the doorbell, wherein the person is detected using one or more biometric identification methods;

detect actuation of the doorbell after detecting the presence of the person;

select a subset of images from the first plurality of images, wherein the subset of images comprises one or more images that were captured after detecting the presence of the person located at the predetermined distance from the doorbell, and prior to the actuation of the doorbell;

identify from the subset of images, a first image at the doorway, the first image being associated with the presence of the person at the predetermined distance from the doorbell;

capture a second image at the doorbell associated with the actuation of the doorbell;

capture a video at the doorbell associated with the actuation of the doorbell;

deliver the first image with a notice of the presence of the person to a recipient for viewing; and

automatically upload the video for viewing upon capturing the video, the video being available for selective viewing by the recipient upon being uploaded.

293.    The Accused Systems, such as provided and operated by Alarm.com and ADT, include an apparatus for visitor detection using a security system that meets the recited features of claim 11.

294.    For example, the Accused Systems include video doorbell devices such as the

ADC-VDB770 depicted below:



295.    On information and belief, the Accused Systems incorporate doorbell camera

products such as the ADC-VDB770.

296.    Furthermore, ADT offers its own doorbell camera such as the following:



76

297.     On information and belief such doorbell cameras include a processor and memory that perform the required steps of claim 11.

298.     On information and belief, the doorbell camera continuously captures video data for a predetermined threshold period of time, and if no event is detected within that threshold period of time, the captured video is overwritten and deleted.



299.     Examples include Alarm.com's video analytics functionality such as ground zone rule and tripwire rule, which upon information and belief, operate such that the camera continuously capture video data for a predefined time period and if no event is detected, will overwrite and delete such video data.

300.     The doorbell camera will detect the presence of a person prior to actuation of a doorbell as well as actuation of the doorbell button.  *See* https://alarm.com/resources/touchless-video-doorbell.

301.     The doorbell camera captures an image prior to the doorbell actuation (e.g., when a person enters a ground zone), which image is ultimately provided to the user for viewing on either the website/web-portal (e.g., Alarm.com or ADT website/web-portal) or mobile phone application (e.g., ADT App, ADT Control App, or ADT Pulse App).  Upon information and belief, the doorbell camera captures another image associated with actuation of the doorbell.

77

302.    The doorbell camera captures video associated with the actuation of the doorbell and automatically uploads it to the Alarm.com backend platform which is accessible to users for selective viewing on either the website/web-portal or mobile phone application.

303.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 11) of the '935 patent.

304.    Alarm.com has also indirectly infringed and continue to so infringe one or more claims (including, at least, claim 11) of the '935 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '935 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

305.    Further, Alarm.com also has indirectly infringed and continue to so infringe one or more claims (including, at least, claim 11) of the '935 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system components that constitute a material part of the inventions claimed in the '935 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '935 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

306.    In addition, ADT has indirectly infringed and continue to so infringe one or more claims (including, at least, claim 11) of the '935 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '935 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its

78

marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

307.    Further, ADT also has indirectly infringed and continue to so infringe one or more claims (including, at least, claim 11) of the '935 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '935 patent, knowing that such components are especially made or especially adapted for uses that infringe the '935 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

308.    Alarm.com and ADT knew at least as early as the filing of these counterclaims that, through its encouragement, the Accused Systems would result in infringement of one or more claims of the '935 patent.

309.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

310.    Despite having actual knowledge, Alarm.com and ADT have continued to carry out infringing activities.  Alarm.com and ADT have had actual knowledge, or at least constructive knowledge, of the '935 patent.  Alarm.com and ADT have known, or have been willfully blind, to the existence of the '935 patent and associated infringement thereof.

311.    Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's and ADT's infringement has been willful and deliberate.

312.     Alarm.com's and ADT's willful infringement of the '935 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## **FOURTEENTH COUNTERCLAIM**

### **(Infringement of U.S. 6,542,075)**

313.     By this reference, Vivint realleges and incorporates the preceding paragraph nos. 1-81 as though fully set forth here.

314.     The Counterclaim Defendants have infringed one or more claims of the '075 patent (see Exhibit 3 attached hereto), in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization products and/or methods practicing one or more claims of the '075 patent. In particular, Counterclaim Defendants have provided and/or operated the Accused Systems in an infringing manner as described in more detail below. Such Accused Systems are enabled at least by Alarm.com's backend platform. The Counterclaim Defendants are liable for their infringement of the '075 patent pursuant to 35 U.S.C. §§ 271(a), (b), and (c).

315.     For example, the Counterclaim Defendants infringe at least claim 1 of the '075 patent, which recites:

> 1. In an integrated information portal in communication with a number of monitoring devices, wherein the integrated information portal includes a first set of monitoring rules for establishing an event threshold for a rule violation and a corresponding response, a method for managing monitoring device data, the method comprising:
>
> obtaining a second set of monitoring rules for establishing an event threshold for a rule violation and a corresponding response, wherein the second set of monitoring rules corresponding user defined monitoring rules provided concurrently with the processing of monitoring device data;

obtaining monitoring device data from one or more of the monitoring devices;

dynamically processing the monitoring device data according to the declarative user defined monitoring rules; and

generating an output corresponding to the dynamic processing of the declarative user defined monitoring rules, when the output may include no output.

316.    The Accused Systems, such as provided and operated by Alarm.com and ADT, perform each of the steps of claim 1.

317.    The Accused Systems include an integrated information portal in communication with a number of monitoring devices, including smart home devices within a home.

318.    The integrated portal includes a number of user-defined processing rules, including various triggers to output various responses by device. For example, a rule may be configured to disarm the Accused System when a user enters a pin number at a door lock. As another example, a rule may be defined to arm the system at 10:00pm every night which in turn locks each door lock and closes the garage door.

319.    The Accused Systems store the plurality of rules within the system and dynamically process such rules with event data received from the various devices within the system.

320.    In the alternative, for direct infringement purposes, Alarm.com either controls the relevant aspects of its Dealers' systems, such as the Accused ADT System, or operates in a joint enterprise with its Dealers (including ADT) to directly infringe one or more claims (e.g., claim 1) of the '075 patent.

321.    Alarm.com has also indirectly infringed one or more claims (including, at least, claim 1) of the '075 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '075 patent, literally and/or under the doctrine of equivalents, such as by

81

advertising and instructing ADT and other Dealers and end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

322.    Further, Alarm.com also has indirectly infringed one or more claims (including, at least, claim 1) of the '075 patent under 35 U.S.C. § 271(c) by selling or offering to sell the Alarm.com system functionality (e.g., software as part of its offering) that constitute a material part of the inventions claimed in the '075 patent, knowing that such system functionality is especially made or especially adapted for uses that infringe the '935 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

323.    In addition, ADT has indirectly infringed one or more claims (including, at least, claim 1) of the '075 patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing infringement of the '075 patent, literally and/or under the doctrine of equivalents, such as by advertising and instructing end customers (for example, through its marketing, user manuals or documentation, technical support, and online knowledgebase) on using the Accused Systems in an infringing manner.

324.    Further, ADT also has indirectly infringed one or more claims (including, at least, claim 1) of the '075 patent under 35 U.S.C. § 271(c) by selling or offering to sell the components of the Accused ADT System that constitute a material part of the inventions claimed in the '075 patent, knowing that such components are especially made or especially adapted for uses that infringe the '075 patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

325.    Vivint has been damaged by these acts of infringement. Vivint has suffered damages and is entitled to recover from Counterclaim Defendants damages adequate to

compensate Vivint, including lost profits and/or a reasonable royalty in amounts to be determined including any further relief, such as compensatory or equitable, as deemed proper and just by the Court.

326.     Alarm.com has had knowledge of the '075 patent since at least August 2014. By letter, Vivint informed Alarm.com of a number of patents that Vivint had acquired, including the '075 patent.

327.     Despite having actual knowledge, Alarm.com continued to carry out infringing activities.  Alarm.com had actual knowledge, or at least constructive knowledge, of the '075 patent.  Alarm.com has known, or has been willfully blind, to the existence of the '075 patent and associated infringement thereof.

328.     Vivint is entitled to enhancement of damages under 35 U.S.C. § 284 of up to three times the amount found or assessed, because as outlined herein Alarm.com's infringement has been willful and deliberate.

329.     Alarm.com's willful infringement of the '075 patent as outlined herein renders this case exceptional, and Vivint is entitled to an award of reasonable attorney fees as a result, pursuant to 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

330.     Vivint hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Vivint requests entry of judgment in its favor and against Alarm.com and ADT as follows:

A.     Declaring that Alarm.com and ADT have each infringed each of U.S. Patents No. 6,160,477, No. 6,211,782, No. 6,542,075; No. 6,727,811, No. 6,748,343, No. 6,829,478,

No. RE43,598, No. 8,193,932, No. 8,698,622, No. 9,767,631, No. 9,972,181, No. 10,133,935, No. 10,242,517, literally and/or under the doctrine of equivalents;

B.       Declaring that Alarm.com has infringed U.S. Patent No. 10,347,172 ("the '172 patent"), literally and/or under the doctrine of equivalents;

C.       Declaring that Alarm.com and ADT's infringement has been willful and deliberate;

D.       Awarding damages to Vivint including its lost profits and in any event an amount no less than a reasonable royalty for each Counterclaim Defendant's infringement of the Vivint Asserted Patents and enhanced under 35 U.S.C. § 284, together with prejudgment and post-judgment interest; an award of supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting, as needed; and such damages awarded without limitation under 35 U.S.C. § 287;

E.       Permanently enjoining Alarm.com and ADT and their respective officers, agents, employees, and others in privity with Alarm.com and/or ADT from further infringement of U.S. Patents No. 8,193,932, No. 8,698,622, No. 9,767,631, No. 9,972,181, No. 10,133,935, No. 10,242,517, and No. 10,347,172.

F.       Awarding attorney's fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

G.       Awarding such other costs and further relief as the Court may deem just and proper.

Dated:  March 8, 2023

Respectfully submitted,

*/s/ Andy Tindel*

**MT2 LAW GROUP**
**MANN | TINDEL | THOMPSON**

Andy Tindel (TX Bar 20054500)
112 E. Line Street, Suite 304
Tyler, Texas 75702
Tel:  (903) 596-0900
Fax: (903)596-0909
atindel@andytindel.com

**FOLEY & LARDNER LLP**

David R. Wright (UT Bar 5164, *pro hac vice*)
Michael A. Manookin (UT Bar 15667, *pro hac vice*)
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Tel: (801) 401-8900
Fax: (385) 799-7576
dwright@foley.com
mmanookin@foley.com

Pavan K. Agarwal (VA Bar 40351, *pro hac vice*)
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel: (202) 672-5300
Fax: (202) 672-5399
pagarwal@foley.com

Jean-Paul Ciardullo (CA Bar 284170)
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
jciardullo@foley.com

Ruben J. Rodrigues (MA Bar 676573)
111 Huntington Avenue, Suite 2500
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
rrodrigues@foley.com

R. Spencer Montei (IL Bar 6313532)
321 North Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
rmontei@foley.com

*Attorneys for Defendant and Counterclaim Plaintiff*
*VIVINT, INC.*

85

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 8th day of March 2023, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Andy Tindel*
Andy Tindel
