**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ALARM.COM INCORPORATED et al, <br><br> Plaintiff, <br> v. <br><br> VIVINT, INC. <br><br> Defendant. | Case No. 2:23-cv-00004-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

**ALARM.COM INCORPORATED AND ICN ACQUISITION, LLC'S OPPOSITION TO VIVINT, INC.'S PARTIAL MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1
LEGAL STANDARD .................................................................................................................. 2
ARGUMENT ................................................................................................................................ 3
      I.     Plaintiff ADC Has Standing to Assert the iControl Patents ................................... 3
      II.    Plaintiffs Adequately Pleaded Pre-Suit Willfulness ................................................ 6
      III.   In The Alternative, Plaintiffs Should Be Permitted to Amend .............................. 10
CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alarm.com Inc. v. ipDatatel, LLC*,
  H-18-cv-02108 (S.D. Tex.) ...................................................................................................3

*Alarm.com v. Protect Am., Inc.*,
  2:17-cv-00674 (E.D. Tex.) .....................................................................................................3

*Alarm.com v. SecureNet Technologies LLC*,
  345 F. Supp. 3d 544 (D. Del. 2018) ....................................................................................3, 5

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*
  No. 2:21-CV-00172, 2022 WL 610796 (E.D. Tex. 2022 Jan. 24, 2022) ............................6, 10

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*,
  288 Fed. App'x 697 (Fed. Cir. 2008) ...........................................................................4, 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ...............................................................................................................3

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
  No. 19-CV-12533, 2020 WL 2079422 (D. Mass. April 30, 2020) .........................................9

*Bowlby v. City of Aberdeen*,
  681 F.3d 215 (5th Cir. 2012) ..................................................................................................2

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ..................................................................................................2

*Gray ex rel. Rudd v. Beverly Enters.-Mississippi, Inc.*,
  390 F.3d 400 (5th Cir. 2004) ..................................................................................................3

*Indep. Wireless Tel. Co. v. Radio Corp. of Am.*,
  269 U.S. 459 (1926) ...............................................................................................................4

*InVue Sec. Prods. v. Mobile Tech, Inc.*,
  No. 3:19-cv-407-SI, 2019 WL 5295464 (D. Or. Oct. 18, 2019) ............................................8

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  2019 WL 330515 (D. Del. Jan. 25, 2019) ..............................................................................6

*Khoung v. Wilmington Sav. Soc'y, FSB*,
  No. 4:20-CV-00184, 2020 WL 4574604 (E.D. Tex. July 22, 2020) ..................................2, 8

*Lone Star Fund V L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ..................................................................................................2

*LTI Holdings Inc. v. Lippert Components Mfg.*,
  No. 3:15-CV-232, 2015 U.S. Dist. LEXIS 116033 (N.D. Ind. Sep. 1, 2015) ..........................6

*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007).................................................................................................4

*Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*,
  No. 6:11-cv-173, 2012 WL 12903081 (E.D. Tex. May 14, 2012) ...........................................2

*Norris v. Hearst Trust*,
  500 F.3d 454 (5th Cir. 2007) ....................................................................................................2

*NXP USA Inc. v. Mediatek Inc.*,
  No. 2:21-CV-00318, 2022 WL 799071 (E.D. Tex. Mar. 15, 2022) .........................................6

*Plano Encryption Techs., LLC v. Alkami Tech., Inc.*,
  No. 2:16-cv-1032, 2017 WL 8727249 (E.D. Tex. Sept. 22, 2017).................................2, 3, 10

*Rite-Hite Corp. v. Kelley Co, Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995) (*en banc*) ..............................................................................3, 5

*SecureNet Techs. LLC*, 345 F. Supp. 3d at 551 ...............................................................................4

*Spine Sols., Inc. v. Medtronic Sofamor Danek USA, Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010).................................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..................................................................................................................2

*Vivint, Inc. v. Alarm.com, Inc.*,
  2:15-cv-00392 (D. Utah)........................................................................................................8, 9

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................2, 10

Rule 12(b)(1).....................................................................................................................................2

Rules 12(b)(1) and 12(b)(6) ..........................................................................................................1, 11

Plaintiffs Alarm.com Incorporated ("ADC") and ICN Acquisition, LLC ("ICN") (collectively "Plaintiffs") respectfully submit this response in opposition to Vivint, Inc.'s ("Vivint") Partial Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) ("Mot."). (Dkt. No. 19.)

## INTRODUCTION

Vivint's partial, non-dispositive motion to dismiss, seeking dismissal of two discrete, limited components of Plaintiffs' Complaint (Dkt. No. 1), should be denied.

*First*, Vivint argues that ADC lacks standing to assert the four iControl Patents[1] and seeks to dismiss ADC as to the counts of the complaint associated with those patents (Counts XI-XIV). But ADC has adequately pleaded that it has standing to assert the iControl Patents as ICN's implied exclusive licensee. ADC not only has the right to practice the claims of the iControl Patents (and does), but it also impliedly holds all rights to exclude others from practicing those claims. Indeed, the District of Delaware, in a decision that this Court may take judicial notice of, has already determined that ADC has standing to assert the iControl Patents.

*Second*, Vivint argues that ADC has not plausibly alleged pre-suit willfulness of the Patents-in-Suit[2] and seeks dismissal of that portion of ADC's damages theory. But ADC has specifically alleged Vivint's knowledge and deliberate infringement of each of the Patents-in-Suit prior to the filing of the Complaint. ADC's description of Vivint as a competitor in a specialized market, coupled with the long litigation history between the parties and other relevant facts, are more than sufficient to support ADC's allegations of pre-suit willful infringement.

---

[1] The "iControl Patents" are U.S. Patent Nos. 8,612,591 (the "'591 Patent"), 9,172,553 (the "'553 Patent"), 9,141,276 (the "'276 Patent") and 8,335,842 (the "'842 Patent").

[2] Plaintiffs assert infringement of fourteen patents (collectively the "Patents-in-Suit"). Plaintiffs originally brought suit on fifteen patents, but subsequently filed a notice of voluntary dismissal without prejudice as to Count V, which concerns U.S. Patent No. 9,196,148. (Dkt. No. 23.)

Because ADC's standing and Vivint's pre-suit willfulness are adequately pleaded in the Complaint, the Court should deny both prongs of Vivint's motion to dismiss and allow the parties to proceed to discovery without further delay.  Should the Court disagree, ADC respectfully submits that it should be granted the opportunity to amend its Complaint.

## **LEGAL STANDARD**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff".  *Plano Encryption Techs., LLC v. Alkami Tech., Inc.*, No. 2:16-cv-1032, 2017 WL 8727249, at *1 (E.D. Tex. Sept. 22, 2017) (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012)).  "The court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'"  *Id.* (citing *Lone Star Fund V L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).  "Courts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to dismiss under Rule 12(b)(6)."  *Mosaid Techs. Inc. v. Freescale Semiconductor, Inc.*, No. 6:11-cv-173, 2012 WL 12903081, at *1 (E.D. Tex. May 14, 2012).

A court may also consider "matters of which a court may take judicial notice".  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Information of which a court may take judicial notice includes "matters of public record".  *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007).  The public record of filings in a judicial action are matters of which a court may properly take judicial notice.  *Khoung v. Wilmington Sav. Soc'y, FSB*, No. 4:20-CV-00184, 2020 WL 4574604, at *3 n.2 (E.D. Tex. July 22, 2020).

Considering all facts properly before it, the court must then determine whether those facts "state a claim [for relief] that is plausible on its face".  *Bowlby*, 681 F.3d at 227 (internal

citations omitted).  This standard requires only that the facts raise "'a reasonable expectation that discovery will reveal' that the defendant is liable for the alleged misconduct". *Plano*, 2017 WL 8727249, at *1 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)).

## ARGUMENT

### I.    PLAINTIFF ADC HAS STANDING TO ASSERT THE ICONTROL PATENTS

Plaintiff ADC has standing to assert the iControl Patents because ADC is the implied exclusive licensee of Plaintiff ICN's patents, which include the iControl Patents.  The federal court in the District of Delaware considered this precise issue in *Alarm.com v. SecureNet Technologies LLC*, and held that ADC is an exclusive licensee of the ICN patents, which had been acquired from iControl.  345 F. Supp. 3d 544, 551 (D. Del. 2018).  While this Court is not bound by that determination, in considering Vivint's motion, it may take judicial notice of the fact of the *SecureNet* court's decision that ADC is an exclusive licensee of ICN's patents, and therefore has standing to assert them.  *Gray ex rel. Rudd v. Beverly Enters.-Mississippi, Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) ("[T]he fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice.").[3]

To be an implied exclusive licensee for the purposes of standing, a party must (1) have an implied right to practice the claimed invention within a given territory, which (2) is exclusive, such that all others seeking to practice the invention cannot do so without the assent of the exclusive licensee.  *Rite-Hite Corp. v. Kelley Co, Inc.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (*en banc*) ("To be an exclusive licensee for standing purposes, a party must have received, not only

---

[3] ADC has twice before brought suit on its own behalf on patents held by ICN, including in this district.  *See Alarm.com v. Protect Am., Inc.*, 2:17-cv-00674 (E.D. Tex.); *Alarm.com Inc. v. ipDatatel, LLC*, H-18-cv-02108 (S.D. Tex.).  In neither case was ADC's standing to assert patents held by ICN disputed.

the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."). Such an exclusive license "need not be in writing for the licensee to have standing". *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. App'x 697, 706 (Fed. Cir. 2008). When an implied exclusive licensee seeks to assert claims of a licensed patent, they must generally join the patentee or assignee as a co-plaintiff. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007) ("[E]xclusionary rights 'must be enforced through or in the name of the owner of the patent,' and the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns.") (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467, 469 (1926)). ADC satisfies the requirements of an implied exclusive licensee, and therefore has standing to assert the iControl Patents.

*First*, ADC has an implied right to practice the inventions of the iControl Patents within the United States, which is the relevant territory for the implied license. Vivint acknowledged that on March 8, 2017, ICN was assigned, *inter alia*, the four iControl Patents asserted in this action. (Mot. at 3.) ICN is—and at all times before and after the assignment of the iControl Patents to Plaintiff ICN was—a wholly-owned subsidiary of Plaintiff ADC. (Compl. ¶ 8.) ICN was established by ADC as a holding company to acquire the portfolio of patents held by iControl Networks, including the iControl Patents. *SecureNet Techs. LLC*, 345 F. Supp. 3d at 551. ADC practices claims of each of the iControl patents within the United States (*e.g.*, Compl. ¶¶ 2, 19) and necessarily does so with the permission of ICN because ICN "does not have an existence separate from Alarm.com". *SecureNet Techs. LLC*, 345 F. Supp. 3d at 551 (internal citations omitted).

*Second*, ADC has "not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well". *Id.* (quoting *Rite-Hite*, 56 F.3d at 1552). ICN's implied promise that all others shall be excluded from practicing the claimed inventions of the iControl Patents is evidenced by the relationship of the two companies and by ADC and ICN's licensing practices. ADC controls all of ICN's business, has the exclusive right to sub-license (or not) patents held by ICN, and ADC participates in and directs all licensing of the patents held by ICN. *Id.* Any license to patents held by ICN, including the iControl Patents, requires ADC's assent. *Id.* For example, in the case of the license granted to Honeywell International, which was at issue in the *SecureNet* case, the license agreement included **only** ADC's signed assent (as the grantor) on the face of the agreement. *Id*. Because ADC holds the sole rights to practice the claimed inventions of the iControl Patents, to the exclusion of all others, ADC is an implied exclusive licensee.

As an implied exclusive licensee, ADC has standing to assert the iControl Patents (*i.e.*, impliedly licensed patents) in this litigation. To have such standing, a plaintiff licensee must join the actual owner of the patents as a plaintiff in the action. *Aspex*, 288 Fed. App'x at 704–05. That is precisely what ADC has done here by including ICN as plaintiff. Accordingly, ADC is an implied exclusive licensee, with standing to sue for infringement of the iControl patents.

Vivint's motion does not address the question of whether ADC may be an implied exclusive licensee. Instead, Vivint argues that ADC's status as ICN's parent "does not confer any standing on ADC". (Mot. at 7.) Vivint's point misses the mark. ADC's basis for standing is not solely its status as ICN's corporate parent, but rather its status as an implied exclusive licensee of the iControl Patents. Thus, Vivint's citations to *Spine Sols., Inc. v. Medtronic*

5

*Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010) and *LTI Holdings Inc. v. Lippert Components Mfg.*, No. 3:15-CV-232 JVB, 2015 U.S. Dist. LEXIS 116033, at *3 (N.D. Ind. Sep. 1, 2015) are inapposite.  In neither case was there evidence that the corporate parent was an exclusive licensee of its subsidiary's patents.

ADC has sufficiently pleaded that it is an implied exclusive licensee of the iControl Patents owned by ICN (asserted in Counts XI–XIV).  Having "join[ed] the patent owner," ADC has standing to assert the iControl Patents, to recover damages for lost profits and to seek permanent injunctive relief.  *Aspex*, 288 Fed. App'x at 705.

## II.    PLAINTIFFS ADEQUATELY PLEADED PRE-SUIT WILLFULNESS

To establish pre-suit willful infringement, the plaintiff must "allege that infringement was 'intentional or knowing'".  *NXP USA Inc. v. Mediatek Inc.*, No. 2:21-CV-00318, 2022 WL 799071, at *3 (E.D. Tex. Mar. 15, 2022).  "A plaintiff need not plead facts demonstrating egregious conduct to establish a claim for willful infringement at the 12(b)(6) stage".  *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00172, 2022 WL 610796, at *6 (E.D. Tex. 2022 Jan. 24, 2022).  Courts have recognized that plaintiffs should be permitted to take discovery on well-pleaded allegations of pre-suit willful infringement, given that "facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery".  *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *8 (D. Del. Jan. 25, 2019) (Bryson, J., sitting by designation).

Plaintiffs adequately allege pre-suit willfulness as to each of the Patents-in-Suit.  To begin, Plaintiffs allege that Vivint had actual or constructive knowledge of each patent prior to the filing of the Complaint.  (*E.g.*, Compl. ¶ 53 ("Vivint had actual or constructive knowledge and notice of the '394 Patent prior to the filing of this complaint . . . ."); *see also* ¶¶ 69, 83, 98, 114, 129, 145, 161, 178, 193, 207, 222, 236, 251, 266).  Plaintiffs further allege that Vivint had

6

knowledge that it was deliberately infringing each of the particular patents in dispute. (*See, e.g.*, *id.* ¶ 55 ("Vivint's infringement of the '394 Patent has been and continues to be deliberate."); *see also id.* ¶¶ 71, 85, 100, 116, 131, 147, 163, 180, 195, 209, 224, 239, 253, 268.) And the Complaint makes additional factual allegations that raise "a reasonable expectation" that discovery will reveal that Vivint is liable for pre-suit willful infringement, including that Vivint and ADC are competitors and that they have a long history of patent litigation between them.

Plaintiffs allege that pre-suit knowledge may be inferred because Vivint and ADC are "competitors in the home security and automation market". (*See, e.g.*, Compl. ¶ 53.) In the context of the parties' long relationship, this is not only "plausible", but likely. Since 2014, both companies have operated "backend" server platforms that support smart home automation and security packages. (Compl. ¶¶ 2–4.) ADC's platform supports third-party devices and services sold by independent dealers nationwide, who in turn market their offerings to the end consumer. By contrast, Vivint's platform is proprietary, and Vivint's Backend supports only products and services sold by Vivint directly to the consumer. (Compl. ¶¶ 17–18). Necessarily, then, any customer who uses Vivint's products must use the Vivint Backend, to the exclusion of those products sold by ADC dealers and whose devices are supported by ADC's competing backend. As an innovator in the smart home automation and security field, ADC undertook to patent the technology embodied by its backend. (Compl. ¶ 18.) And Vivint, as it became a competitor in the provision of backend services, took a license to some of this technology in 2013 as it recognized its need to rely on ADC's technology. (Compl. ¶ 24.) That Vivint, which relied on ADC's technology in developing its own backend, would continue to monitor ADC's ongoing innovation (and therefore patent portfolio), is not only plausible, it is probable.

Vivint cites *InVue Sec. Prods. v. Mobile Tech, Inc.* for the proposition that "[c]ompetition alone is not enough to infer pre-suit knowledge of the patents-in-suit". (Mot. at 11.) But in that case, the Court held that plaintiff's factual allegations *were* sufficient to show pre-suit willful infringement because "(1) [the parties] have been continuously involved in multiple lawsuits asserting patent infringement involving retail security systems since at least December 15, 2015[,] (2) [the parties] are involved in ongoing post-grant proceedings before the United States Patent and Trademark Office, and (3) [the parties] are competitors in the same industry."

Much like in *InVue*, the Complaint's allegations and matters of public record[4] form "a 'constellation of facts'" from which this Court may conclude that ADC has sufficiently alleged pre-suit knowledge of the Patents-in-Suit. *Id.* at *5. These materials show that ADC and Vivint (1) have been involved in patent litigation against each other since 2015, (2) have been involved in multiple proceedings before the PTO, and (3) are fierce competitors in the same industry, as Vivint has alleged in other litigation. No. 3:19-cv-407-SI, 2019 WL 5295464, at *4 (D. Or. Oct. 18, 2019).

Indeed, in 2013, ADC and Vivint entered into a patent cross-licensing agreement ("PCLA") under which ADC licensed certain patents (not involved in this litigation) to Vivint and pursuant to which Vivint became ADC's competitor in providing backend services to the home automation industry. (Compl. ¶ 24.) Two years later, Vivint sued ADC in the District of Utah asserting six patents that Vivint had, since entering into the PCLA, acquired from a third party. *See Vivint, Inc. v. Alarm.com, Inc.*, 2:15-cv-00392 (D. Utah). Even today, eight years later, the parties continue to be in active litigation in the District of Utah concerning the

---

[4] Filings in the district courts and before the PTO are a matter of public record of which this Court may properly take judicial notice. *See, e.g.*, *Khoung*, 2020 WL 4574604, at *3 n.2 (taking judicial notice of filings made in a separate lawsuit).

infringement and validity of those patents. *Id.* Also much like in *InVue*, ADC and Vivint have had a long history of adversarial proceedings in the PTO, including *inter partes* reviews and *ex parte* reexaminations.[5]

With respect to Vivint's and ADC's status as competitors, the facts of this case are analogous to the facts of *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, where the court held that pre-suit willful infringement was plausibly alleged where the plaintiff had alleged knowledge by the defendant of the asserted patents based on the parties' "nature as competitors in a specialized market, previous patent litigation between [the parties], and [defendant]'s access to [plaintiff]'s [] patent portfolio". No. 19-CV-12533, 2020 WL 2079422, *5–6 (D. Mass. April 30, 2020) Here, Plaintiffs have also pleaded that the parties are competitors in a specialized market (*i.e.*, the smart home security and automation industry), the extensive litigation history of the parties is a matter of public record, and, through the PLCA, Vivint had complete access to ADC's patent portfolio. Indeed, the only manner in which Vivint would be able to ascertain the scope of its license would have been by carefully monitoring ADC's patent portfolio and maintaining knowledge of each patent held by ADC.

Vivint also argues that it could not have had pre-suit knowledge of the so-called "TriPlay" patents because they were acquired "just a few *days* before filing this lawsuit". (Mot. at 10 (emphasis in original).) Vivint has its facts wrong. ADC acquired the patents from TriPlay on March 2, 2020, when they were assigned to ADC-subsidiary JTT Investment Partners, LLC ("JTT"), as reflected in the PTO assignment records. (Mot. Ex. A at 6–7, 11, 15, 17.) JTT's

---

[5] *See* IPR2015-01965; IPR2015-01967; IPR2015-01977; IPR2015-01995; IPR2015-01997; IPR2015-02003; IPR2015-02004; IPR2015-02008; IPR2016-00116; IPR2016-00129; IPR2016-00155; IPR2016-00161; IPR2016-00173; IPR2016-01080; IPR2016-01091; IPR2016-01110; IPR2016-01124; IPR2016-01126; Reexamination Control No. 90/020,115; Reexamination Control No. 90/014,007.

status as an ADC subsidiary is also public knowledge, disclosed in ADC's SEC filings, which are available to Vivint, and of which this Court may take judicial notice. (*E.g.*, Alarm.com Holdings, Inc. Form 10-K for 2019 Ex. 21.1.)  ADC has at all times been an implied exclusive licensee of the patents held by JTT, with rights to assert damages for its own lost profits during the time such patents were held by JTT.  Immediately before filing this Complaint, JTT assigned the TriPlay patents to ADC, such that ADC became the owner rather than the implied exclusive licensee.

Pre-suit willfulness does not require allegations of "egregious conduct . . . at the 12(b)(6) stage". *Arigna Tech.*, 2022 WL 610796, at *6.  The facts that Plaintiffs have pleaded, understood in the context of facts of which this court may take judicial notice and of which Vivint is aware, raise "'a reasonable expectation that discovery will reveal' that the defendant is liable for the alleged misconduct". *Plano*, 2017 WL 8727249, at *1 (internal citation omitted).

Plaintiffs have adequately alleged pre-suit willful infringement by Vivint as to each of the Patents-in-Suit.  This court should therefore deny Vivint's motion to dismiss ADC's allegations of pre-suit willfulness under Rule 12(b)(6).

### III.     IN THE ALTERNATIVE, PLAINTIFFS SHOULD BE PERMITTED TO AMEND

Plaintiffs have properly alleged both ADC's standing to assert the iControl Patents and pre-suit willfulness as to each of the Patents-in-Suit.  But should the Court disagree as to one or both of these issues, Plaintiffs respectfully submit that they should be granted leave to amend their Complaint to include additional factual allegations, including to incorporate matters of which the Court may take judicial notice.

## CONCLUSION

For the foregoing reasons, this Court should deny Vivint's Partial Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) in its entirety.  If the Court should grant any part of Vivint's motion, the Court should permit Plaintiffs to amend their Complaint.

Dated: March 13, 2023  Respectfully submitted,

/s/ *Melissa R. Smith*

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue,
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Keith R. Hummel (*pro hac vice*)
Sharonmoyee Goswami (*pro hac vice*)
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
khummel@cravath.com
sgoswami@cravath.com

*Counsel for Plaintiffs Alarm.com*
*Incorporated and ICN Acquisition, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served, via the Court's CM/ECF system per Local Rule CV-5(a) (3) upon all counsel of record on March 13, 2023.

*/s/ Melissa R. Smith*
Melissa R. Smith
