**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ALARM.COM INCORPORATED and ICN ACQUISITION, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> VIVINT, INC., <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| VIVINT, INC. <br><br> Counterclaim Plaintiff, <br><br> vs. <br><br> ALARM.COM INCORPORATED and ADT LLC, d/b/a ADT SECURITY SERVICES, <br><br> Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 2:23-cv-00004-JRG-RSP

**VIVINT, INC.'s MOTION TO TRANSFER TO THE DISTRICT OF UTAH**
**PURSUANT TO 28 U.S.C. § 1404(a)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. ii

I.     FACTUAL BACKGROUND ................................................................................. 1
       A.    ADC, ICN, and ADC's Dealers ................................................................. 1
       B.    The Asserted Patents ................................................................................. 2
       C.    Vivint and the Accused Products ............................................................... 3
       D.    Vivint's Lack of Specific Relationship to This District............................. 6
       E.    Vivint's Claims against ADC and ADT ..................................................... 6
       F.    Vivint's Co-Pending Lawsuits against ADC and ADT in Utah ................. 7
       G.    ADC's, ICN's, and ADT's Lack of Particular Relationship to This District ........ 8

II.    LEGAL STANDARDS ........................................................................................ 9

III.   ARGUMENT ........................................................................................................ 9
       A.    This Lawsuit Could Have Been Filed in the District of Utah.................... 9
       B.    The Private Interest Factors Favor Transfer to The District of Utah .................. 10
             1.    Relative Ease of Access to Sources of Proof ............................. 10
             2.    Availability of Compulsory Process to Secure Attendance of Witnesses .......... 12
             3.    Cost of Attendance for Willing Witnesses................................. 13
             4.    Other Practical Problems ........................................................... 13
       C.    On Balance, the Public Interests Favor Transfer to the District of Utah ............. 14
             1.    The District of Utah has a Strong Interest in This Lawsuit ...................... 14
             2.    The Remaining Public Interest Factors ...................................... 15

IV.    CONCLUSION................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Farmobile LLC v. Farmers Edge Inc.*,
  No. 2:21-cv-00411, 2022 U.S. Dist. LEXIS 120370 (E.D. Tex. July 7, 2022) ........... 11, 12, 14

*In re Amazon.com, Inc.*,
  No. 2022-0157, 2022 U.S. App. LEXIS 34596 (Fed. Cir. Dec. 15, 2022) ............................... 11

*In re Apple, Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) .............................................................................................. 10

*In re Apple Inc.*,
  No. 2021-0181, 2021 U.S. App. LEXIS 33788 (Fed. Cir. Nov. 15, 2021) ............................. 12

*In re Apple Inc.*,
  No. 2022-0137, 2022 U.S. App. LEXIS 14398 (Fed. Cir. May 26, 2022) .............................. 11

*In re Atlassian Corp., PLC*,
  No. 2021-0177, 2021 U.S. App. LEXIS 33790, (Fed. Cir. Nov. 15, 2021) ............................ 15

*In re FedEx Corp. Servs., Inc.*,
  No. 2022-0156, 2022 U.S. App. LEXIS 28988 (Fed. Cir. Oct. 19, 2022) .............................. 15

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .................................................................................... 11, 13, 15

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) .............................................................................................. 14

*In re HP Inc.*,
  No. 2018-0149, 2018 U.S. App. LEXIS 27963 (Fed. Cir. Sept. 25, 2018) ............................ 12

*In re Netflix, Inc.*,
  No. 2022-0110, 2022 U.S. App. LEXIS 1390 (Fed. Cir. Jan. 19, 2022) ................................. 11

*In re Toa Techs., Inc.*,
  543 F. App'x 1006 (Fed. Cir. 2013) ........................................................................................ 14

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .............................................................................................. 15

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .............................................................................................. 9, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................................................... 9

*Quest NetTech Corp. v. Apple, Inc.*,
  No. 2:19-cv-00118, 2019 U.S. Dist. LEXIS 206019 (E.D. Tex. Nov. 27, 2019) ................... 13

*Unicorn Energy GMBH v. Tesla, Inc.*,
  No. 2:20-cv-00338, 2021 U.S. Dist. LEXIS 167381 (E.D. Tex. Sept. 3, 2021) ..................... 11

*Uniloc 2017 LLC v. Google LLC*,
  No. 2:18-cv-00504, 2020 U.S. Dist. LEXIS 100416 (E.D. Tex. June 8, 2020) ...................... 15

*Viking Techs., LLC v. Assurant, Inc.*,
  No. 2:22-cv-00357, 2021 U.S. Dist. LEXIS 154161 (E.D. Tex. June 21, 2021) ...................... 9

**Statutes**

28 U.S.C. § 1391 ........................................................................................................ 9, 10
28 U.S.C. § 1400(b) .................................................................................................. 9, 10
28 U.S.C. § 1404(a) .................................................................................................... 1, 9
28 U.S.C. § 1331 ............................................................................................................. 9
28 U.S.C. § 1338(a) ........................................................................................................ 9
Utah Code Ann. § 78B-3-201 ...................................................................................... 10

**Rules**

FEDERAL RULES OF CIVIL PROCEDURE 45(c) ............................................................... 12

4870-9762-3120

Vivint, Inc. ("Vivint") moves this Court to transfer this lawsuit to the District of Utah under 28 U.S.C. § 1404(a). Balancing the public and private interests, Utah is a more convenient forum than the Eastern District of Texas (the "District"). With respect to private interests, (1) all of the relevant Vivint documents relating to the design, development, marketing, sale, and finances of the Accused Products, as well as the relevant witnesses having knowledge of the same, are located in Utah; (2) multiple third-party witnesses, including former Vivint employees, are located in Utah and will be subject to the subpoena power of that court; (3) it will be less expensive for multiple party and non-party witnesses to attend trial in Utah; and (4) transfer supports judicial economy because Judge Clark Waddoups is presiding over two pending patent infringement cases in Utah brought by Vivint against plaintiff Alarm.com Inc. ("ADC") and third-party counterclaim defendant ADT LLC ("ADT"), and is familiar with the parties, technology, and products. It is not apparent that any similar connections exist in this District. With respect to public interests, Utah has a strong interest because the development of the Accused Products occurred there, and Plaintiffs accuse Vivint of secretly misappropriating ADC's technology, which "calls into question" the work of Vivint engineers who live in Utah. While trial may occur faster in this District, that consideration alone does not outweigh the remaining factors.

## I.      FACTUAL BACKGROUND

### A.      ADC, ICN, and ADC's Dealers

ADC is a Delaware corporation headquartered in Tysons, VA. ECF #1 ("Compl."), ¶7. ADC offers a home automation and security platform where dealers offer services to customers. *Id.*, ¶¶2-17. ADC refers to this platform as a "backend," which hosts cloud-based solutions providing home automation and security. ICN Acquisition, LLC ("ICN") is a Delaware limited liability company and a wholly owned subsidiary of ADC. Compl. ¶8, ¶2 n.1. Plaintiffs identify

no discernable connection between ADC or ICN and this District. ADC does not sell products or services directly to end customers; rather, its products and services are sold by a network of independent dealers ("ADC's Dealers"). Compl., ¶¶17, 18. One of ADC's largest dealers is ADT. Ex. 1. ADT is a Delaware limited liability company headquartered in Boca Raton, FL. Ex. 2.

### B.    The Asserted Patents

ADC and ICN accuse Vivint of infringing 15 U.S. patents (the "Asserted Patents"). ADC purportedly owns eleven: 7,457,834; 7,536,388; 7,941,188; 8,860,804; 9,064,394; 9,196,148; 9,558,447; 9,665,778; 10,026,300; 10,915,758; 11,354,908; ICN purportedly owns four: 8,335,842; 8,612,591; 9,141,276; 9,172,553. Compl., ¶¶7-8. Plaintiffs allege they incurred lost profit damages from Vivint's alleged infringement. *E.g.*, *id.*, ¶¶54, 70, 84, 99, 115, 130, 146, 162.

Virtual Display Patent. Vivint refers to the '804 patent as the "ADC Virtual Display Patent." Plaintiffs allege that it is "generally directed to technological improvements to systems and methods for automatically capturing, uploading and publishing content." Compl., ¶258. The inventors, Babak Rezvani, Jack L. Chen, Edward B. Kalin, and Reza Jalili (*id.*, ¶255), reside in New York, NY, Brooklyn, NY, Nelson, NH, and Montpellier, France, respectively. Exs. 3-6.

Virtual Sensor Patents. Vivint refers to the '394, '778, '908, and '758 patents as the "ADC Virtual Sensor Patents." Plaintiffs allege that these patents are "generally directed to technological improvements in virtual sensor technology." Compl., ¶¶44, 60, 76, 90. The inventor Stephen Trundle (*id.*, ¶¶41, 57, 73, 87), resides in Falls Church, VA. Ex. 7.

"Location-based Monitoring Patents." Plaintiffs allege that '148 and '300 patents are "generally directed to improvements in monitoring system alert technology." Compl., ¶¶105, 121. The inventor David James Hutz (*id.*, ¶¶102, 118), resides in Herndon, VA. Ex. 8.

"Data Retrieval/Storage Patents." Plaintiffs allege that the '834, '388, '188, and '447

patents are directed to improvements to methods, devices, and systems that: "aggregate and retrieve network sensor data" or "store occurrence data gathered by a distributed sensor network" or "sense temperature and motion parameters in order to induce a change in the environment," respectively. Compl., ¶¶136, 152, 168, 185. The inventors, Edward Jung and Clarence Tegreene (*id.*, ¶¶133, 149, 165, 182), reside in Seattle, WA, and Bellevue, WA, respectively. Exs. 9, 10.

"Networked Touchscreen Patents." Plaintiffs allege that the '591 and '553 patents are directed to "technological improvements in touchscreen controlled security networks" Compl., ¶¶200, 214. The inventors, Paul J. Dawes, Jim Fulker, and Carolyn Wales (*id.*, ¶¶197, 211), reside in Redwood City, Palo Alto, and Menlo Park, CA, respectively. Exs. 11-13.

"Synchronized Interface Patents." Plaintiffs allege that the '276 and '842 patents are directed to "technology enabling the display of home security system monitoring information on a mobile device" and "improvements in premises management networking," respectively. Compl., ¶229, 244. The inventors are Mr. Dawes, Mr. Fulker, Ms. Wales, Reza Raji, and Gerald Gutt. *Id.*, ¶226, 241. Mr. Dawes, Mr. Fulker, and Ms. Wales reside in California, as mentioned above. Mr. Raji resides in Menlo Park, CA; Mr. Gutt resides in Tucson, AZ. Exs. 14, 15.

## C.      Vivint and the Accused Products

Vivint is a Utah corporation headquartered in Provo, Utah and employs about 7,800 people in Utah.[1] 2/27/23 Declaration of Jim Nye ("Nye"), ¶4. Founded in 1999, Vivint provides an integrated smart home system, including in-home consultation, professional installation and support, as well as 24/7 customer care and monitoring. *Id.*, ¶3. Vivint's products include, *e.g.*, the Smart Hub, Smart Home App, Doorbell Camera Pro, Outdoor Camera Pro, Indoor Camera, Smart

---

[1] Effective March 10, 2023, Vivint's indirect parent, Vivint Smart Home, Inc., was acquired by NRG Energy, Inc. Vivint will continue to operate as a separate corporate entity.

4870-9762-3120

Thermostat, and Car Guard.

Plaintiffs accuse certain functionality allegedly within Vivint's system as infringing including "using sensors, such as cameras, to detect environmental conditions, communicate those conditions to Vivint mobile app users and take action in accordance with user-defined instructions; allowing touchscreen control of Vivint panels and networked monitoring components; using GPS technology to provide location-based alerts; including through its 'Car Guard' products; and other home automation and security system functionality." Compl. ¶¶4-5 (the "Accused Products"). Nearly all of Vivint's development of the Accused Products occurred in Lehi, UT.[2] *Id.*, ¶6.

The employees who designed and developed the Accused Products primarily reside in Utah and worked or work at the Innovation Center in Lehi. *Id.* Likewise, the current and former employees involved in marketing, sales, and financial accounting for the Accused Products reside in Utah and work or worked at Vivint's headquarters in Provo. *Id.*, ¶9. Thus, all decision making relating to the design, development, marketing, sales, and financial accounting of the Accused Products has historically been, and continues to be, centered in Utah. *Id.*, ¶10.

Vivint identifies the following current Vivint employees who have knowledge relevant to the design, development, sales, marketing, and financial accounting of the Accused Products:

- <u>Ryan Carlson</u>, Senior Director of Engineering at Vivint, is responsible for design and development of the Accused Products, including development of Vivint's backend and security panels. Nye, ¶22. He resides in South Jordan, UT. Ex. 16.
- <u>Jim Nye</u>, Chief Product Officer at Vivint, leads its product development strategy, including development of a scaled product portfolio, with a focus on strategic product development and customer engagement. Nye, ¶2. He resides in Provo, UT. Ex. 17.
- <u>Todd Santiago</u>, Chief Revenue Officer at Vivint, leads its sales and marketing initiatives and has knowledge about the smart home competitive landscape and the related positioning of the Accused Products. Nye, ¶23. He resides in Lehi, UT. Ex. 18.
- <u>Scott Dixon</u>, Senior Director of Finance at Vivint, leads the finance team for Vivint's

---

[2] Some R&D relating to the Accused Products occurred in Boston, MA; but, there are no documents or witnesses in Boston that have particular or unique relevance. Nye, ¶7.

Accused Products and has knowledge of its financial records, including revenue recognition and finance tracking. Nye, ¶24. He resides in Provo, UT. Ex. 19.

Vivint further identifies the following former employees who have knowledge relevant to the design, development, sales, marketing, and financial accounting of the Accused Products:

- Jeremy Warren, former VP of Innovation and CTO, was involved in the original design of Vivint's backend. Nye, ¶16. He resides in Draper, UT. Ex. 20.

- Alex Dunn, former President and Senior Advisor, was involved in business development and operations relating to the Accused Products, and led Vivint's license negotiations with ADC. Nye, ¶17. He resides in Provo, Utah. Ex. 21.

- Sean Ricks, former VP, Associate General Counsel, was responsible for managing Vivint's intellectual property portfolio. Nye, ¶21. He resides in American Fork, Utah. Ex. 22.

- Todd Pedersen, founder and former CEO, led business development and operations from the ground up. Nye, ¶20. He resides in Provo, UT. Ex. 23.

- Matt Eyring, former Chief Strategy & Innovation Officer and Executive VP of National Inside Sales, was involved in the design of the Accused Products and Vivint's relationship with ADC. Nye, ¶19. He resides in Provo, UT. Ex. 24.

- Jeff Lyman, former Chief Marketing Officer, led business development and operations and was involved in the development of the mobile application interface and customer experience. Nye, ¶18. He resides in Alpine, UT. Ex. 25.

Vivint does not have any employees in this District responsible for the design or development of the Accused Products. Nye, ¶26. To the extent Vivint has employees in this District with technical knowledge of the Accused Products, such knowledge is general and limited to supporting regional sales and installation. *Id.* Vivint does not have any employees in this District responsible for marketing, sales, or financial accounting of the Accused Products and who have particular or unique knowledge relevant to this lawsuit. *Id.*, ¶27. To the extent there are Vivint employees in this District with knowledge related to marketing, sales, or financial accounting of the Accused Products, it is general and limited to supporting regional sales. *Id.*

Documents relevant to the design, development, marketing, sales, and financial accounting of the Accused Products are located in Utah. *Id.*, ¶28. The source code and firmware for the Accused Products are maintained in Utah. *Id.* Vivint does not possess any documents relevant to

the design and development of the Accused Products in this District. *Id.*, ¶29. To the extent there are documents related to marketing, sales, or financial accounting of the Accused Products in this District, such documents are general and limited to supporting regional functions. *Id.*, ¶30.

The exception to the foregoing is Vivint's Car Guard product, which comprises technology acquired by Vivint from third parties. *Id.*, ¶31. The on-board diagnostic device that interacts with Vivint's smart home system is provided by KonnectOne, which is organized under the laws of Wyoming and headquartered in Bellevue, WA. *Id.* The software platform provided on the device is provided by Mojio. *Id.* Mojio is headquartered in Campbell, CA. *Id.* Vivint is not aware of these third parties having relevant employees or documents in this District. *Id.*

### D.     Vivint's Lack of Specific Relationship to This District

Plaintiffs allege venue is proper in this District due to certain activities of Vivint here. Compl., ¶¶12-15. Plaintiffs identify three alleged Vivint places of business in this District, but only the Frisco address is a Vivint facility. Nye, ¶32. Vivint leases this facility as a sales recruiting office and distribution center. *Id.*, ¶34. No Vivint employee uses this facility who is responsible for design, development, sales, marketing, or financial accounting of the Accused Products and whose responsibility rises to a level where he or she would have particular or unique knowledge relevant to this lawsuit. *Id.*  Except for limited distribution records associated with the region, there are no documents in this facility relevant to design, development, marketing, sales, or financial accounting of the Accused Products. *Id.* Plaintiffs allege that Vivint offers products and services and conducts business in this District. Compl., ¶¶13-14. But these activities are not performed by employees with particular or unique knowledge relevant to this lawsuit; and do not generate documents that are particularly or uniquely relevant to this lawsuit. Nye, ¶35.

### E.     Vivint's Claims against ADC and ADT

Vivint accuses ADC and ADT of infringing 14 U.S. patents: 6,160,477; 6,211,782; 6,542,075; 6,727,811; 6,748,343; 6,829,478; 8,193,932; 8,698,622; 9,767,631; 9,972,181; 10,133,935; 10,347,172; 10,242,517; RE43,598 (the "Counter Patents"). ECF #24. The '631 and '517 inventors, Mr. Nye, Mr. Warren, Michael Child, and Jeffrey Thomas (ECF #24-10, cover), reside in Provo, Alpine, Lehi, and Draper, UT (Exs. 17, 20, 26, 27). The '181 inventor, Kenneth Baldwin (ECF #24-11, cover), resides in Lehi, UT (Ex. 28). The '935 inventors, Mr. Child, Dean Brederson, Craig Matsuura, and JonPaul Vega (ECF #24-12, cover), reside in Lehi, Salt Lake City, and Draper, UT, and New York City, NY (Exs. 26, 29-31). The '172 inventors, Scott Moulton, Craig DeVries, and Stephen Boynton (ECF #27-1, cover), reside in Salt Lake City, Bountiful, and Lehi, UT. (Exs. 32-34). One of the '477 and '782 inventors, David Sandelman (ECF #24-1, cover), resides in Perkinsville, VT. (Ex. 35). Two of the '075 inventors, Geoffrey Barker and Paul Talley (ECF #24-3, cover), reside in Seattle, WA, and Oklahoma City, OK, respectively (Exs. 36-37). The '811 inventor, Gregory Fendis (ECF #24-4, cover), resides in Melbourne, Australia (Ex. 38). Three of the '343 and '598 inventors, Karen Grose, Christoph Schebel, and David Antal (ECF #24-5, cover), reside in Seattle, Suquamish, and Silverdale, WA, respectively (Exs. 39-41). The '478 inventors, Pamela Layton, Keith Crawford, Jeffrey Gadboys, and Jack Jacobs (ECF #24-6, cover), reside in Westwood, MA, Naples, FL, and Millington, NJ (Exs. 42-45). The '932 and '622 inventor, Aaron Emigh (ECF #24-8, cover), resides in San Mateo, CA (Ex. 46).

F.      **Vivint's Co-Pending Lawsuits against ADC and ADT in Utah**

Vivint has two pending lawsuits against ADC and ADT in Utah. In 2015, Vivint sued ADC in Utah for infringement of Vivint U.S. patents: 6,535,123; 6,717,513; 6,462,654; 6,147,601; 6,924,727. *Vivint v. Alarm.com*, 2:15-cv-00392-CW, ECF #7. In 2021, Vivint sued ADT, LLC in the Utah for infringement of Vivint U.S. patents: 10,228,151; 10,325,159; 9,349,262; 8,700,769;

8,392,552. *Vivint v. ADT*, 2:21-cv-00115-CW (all patents asserted by Vivint in Utah the "Vivint Utah Patents"[3]; the two lawsuits the "Utah Lawsuits"). Vivint alleges in the Utah Lawsuits that it incurred lost profit damages from ADC and ADT's infringement, including from lost sales of the Accused Products. The Utah Lawsuits are assigned to Judge Waddoups.

The technology of the Vivint Utah Patents is in the same field as the Asserted Patents. The '159 patent relates to "virtual sensor technology" and is similar to the Virtual Sensor Patents. The '713 patent relates to "monitoring system alert technology" and is similar to the Location-based Monitoring Patents. The '769 and '552 patents relate to systems that "aggregate and retrieve network sensor data" or "store occurrence data gathered by a distributed sensor network" and are similar to the Data Retrieval/Storage Patents. The '123, '513, '654, '601, and '727 patents relate to "the display of home security system monitoring information on a mobile device" or "premises management networking" and are similar to the Integrated Interface Patents.

### G.     ADC's, ICN's, and ADT's Lack of Particular Relationship to This District

ADC, ICN, and ADT bear no apparent particular or unique relationship to this District. ADC and ICN are organized under the laws of Delaware and their complaint does not identify any physical presence in this District. It is also not apparent that either company has employees in this District with particular or unique knowledge relevant to this lawsuit, or that either company maintains documents in this District that are relevant to this lawsuit. None of the inventors of the Asserted Patents reside in this District. *See* Exs. 3-15. ADT is organized in Delaware and headquartered in Florida. Ex. 2. Although ADT may lease office space in this District, these offices likely support ADT's regional activity and thus it is not apparent the employees have particular or

---

[3] Certain claims and patents asserted in Utah have been invalidated in IPR proceedings. The identified Vivint Utah Patents include only the asserted patents with surviving claims.

unique knowledge relevant to this lawsuit or the offices contain documents particularly or uniquely relevant to this lawsuit. Vivint expects that ADT's relevant employees and documents are located in Florida, consistent with Vivint's experience with ADT in the Utah Lawsuits.

## II.   <u>LEGAL STANDARDS</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The court considers a non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The private interests include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interests include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

## III.   <u>ARGUMENT</u>

### A.   **This Lawsuit Could Have Been Filed in the District of Utah**

ADC could have brought this lawsuit in the District of Utah. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008); *Viking Techs., LLC v. Assurant, Inc.*, No. 2:22-cv-00357, 2021 U.S. Dist. LEXIS 154161, at *7-9 (E.D. Tex. June 21, 2021). Utah has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Utah has personal jurisdiction over Vivint and ADT. With respect to Vivint, Utah has general personal jurisdiction because Vivint is headquartered in Provo and thus has continuous and systematic contact with the forum. Venue is proper there pursuant to 28 U.S.C. § 1391 and 1400(b) for the same reason, and further because the Accused Products are

designed, developed, and sold there. Accordingly, ADC could have filed this lawsuit in Utah.

With respect to ADT, Utah has general and specific jurisdiction over ADT pursuant to the Due Process Clause of the Fifth Amendment and the Utah Nonresident Jurisdiction Act (Utah Code Ann. § 78B-3-201 *et seq.*). ADT's contacts with Utah are continuous and systematic, rendering it at home there. ADT is registered in Utah as "ADT LLC of Delaware" and does business as "ADC Security Services." ADT has a regular and established place of business in Utah located at 1279 West 2200 South, Suite B, West Valley City, Utah 84119 (the "ADT Office"). Ex. 2. ADT employees, including those in the ADT Office, market, sell, install, and service ADT's products in Utah, including the products accused of infringing the Counter Patents. ADT advertises jobs in Utah, including for the ADT Office. Ex. 47.

Venue is also proper in the District of Utah pursuant to 28 U.S.C. §§ 1391 (and 1400(b)) because: (1) the ADT Office is a physical place of business in Utah and is owned and exclusively controlled by ADT; (2) the ADT Office is a regular and established place of business of ADT and staffed with employees who regularly conduct ADT's business; (3) ADT specifically markets, sells, installs, and services infringing products and systems to customers in Utah, including the Control products described in Vivint's counterclaims. Accordingly, Vivint could have filed its counterclaims against ADT in a lawsuit in the District of Utah.

### B.    The Private Interest Factors Favor Transfer to The District of Utah

#### 1.    Relative Ease of Access to Sources of Proof

The relative ease of access to sources of proof strongly favors transfer to the District of Utah. This factor analyzes the relative ease of access to sources of proof, including documentary and other physical evidence. *In re Apple, Inc.*, 979 F.3d 1332, 1349-40 (Fed. Cir. 2020) (finding the court "erred by failing to meaningfully consider the wealth of important information in

-10-

NDCA"). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

Appellate courts affirm the relevance and importance of the physical location of these sources of evidence. *See, e.g.*, *In re Amazon.com, Inc.*, No. 2022-0157, 2022 U.S. App. LEXIS 34596, at *5-9 (Fed. Cir. Dec. 15, 2022) (reversing court where sources of proof were almost exclusively found in the transferee district); *In re Apple Inc.*, No. 2022-0137, 2022 U.S. App. LEXIS 14398, at *3-7 (Fed. Cir. May 26, 2022) (affirming analysis finding presence in the transferee district of documents and source code favored transfer); *In re Netflix, Inc.*, No. 2022-0110, 2022 U.S. App. LEXIS 1390, at *7 (Fed. Cir. Jan. 19, 2022) (reversing failure to properly weigh the existence of documents at the location where primary decision making takes place).

This Court's recent transfer decisions are consistent. *See, e.g.*, *Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-00411, 2022 U.S. Dist. LEXIS 120370, at *6-9 (E.D. Tex. July 7, 2022) (transferring where majority of identified documents and sources of proof were located in transferee district); Ex. 48, *Jawbone Innovations, LLC v. Amazon.com, Inc.*, No. 2:21-cv-00435, ECF #60 at 5-7 (E.D. Tex. Sept. 21, 2022) (same); *Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-cv-00338, 2021 U.S. Dist. LEXIS 167381, at *3-6 (E.D. Tex. Sept. 3, 2021) (same).

Nearly all of Vivint's documents and source code relevant to the design, development, marketing, sales, and finances of the Accused Products are located in Utah. Nye, ¶¶28-30. Nearly all of Vivint's employees and former employees with knowledge relevant to the design, development, marketing, sales, and finances of the Accused Products reside in Utah. *Id.*, ¶¶6-27; Exs. 16-25. No Vivint documents, employees, or former employees with particular or unique information or knowledge relevant to this lawsuit are located in this District. Nye, ¶¶26-30.

Moreover, it is not apparent that ADC, ICN or ADT maintain any particular or unique documents in this district or can identify employees with particular or unique knowledge in this District. ADC is headquartered in Tysons, Virginia and ADT is headquartered in Boca Raton, Florida. Compl., ¶7; Ex. 2. All the inventors of the Asserted Patents and Counter Patents are located outside of this District, including Mssrs. Nye, Warren, Child, Thomas, Baldwin, Brederson, Matsuura, Moulton, DeVries, and Boynton, who reside in Utah. *See* Exs. 3-15, 17, 20, 26-45. Thus, the majority of documents and witnesses relevant to Plaintiffs' claims against Vivint and Vivint's counterclaims against ADC and ADT are in Utah, or otherwise not in this District.

### 2.  Availability of Compulsory Process to Secure Attendance of Witnesses

The availability of compulsory process to secure the attendance of witnesses favors transfer to the District of Utah. This factor considers the transferor and transferee courts' subpoena power. *Farmobile*, 2022 U.S. Dist. LEXIS 120370, at *9. Federal district courts have the absolute power to compel attendance "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FRCP 45(c)(1)(A). Federal district courts have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; (ii) is commanded to attend a trial and would not incur substantial expense." FRCP 45(c)(1)(B). "When there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-0149, 2018 U.S. App. LEXIS 27963, at *8 n.1 (Fed. Cir. Sept. 25, 2018). This factor strongly favors transfer when third-party witnesses are subject to the subpoena powers of the transferee district, but not the transferor district. *In re Apple Inc.*, No. 2021-0181, 2021 U.S. App. LEXIS 33788, at *8-10 (Fed. Cir. Nov. 15, 2021).

Multiple non-party witnesses with unique knowledge of the design, development, marketing, and sales of the Accused Products, including Messrs. Warren, Dunn, Ricks, Pedersen,

Eyring, and Lyman, reside in Utah. Exs. 20-25. These witnesses reside within 100 miles of the District of Utah (Ex. 49), making it the only court with the power to compel them to appear at trial. In contrast, no apparently relevant non-party witnesses reside in this District.

### 3.    Cost of Attendance for Willing Witnesses

The cost of attendance for willing witnesses favors transfer. When the distance between an existing venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *Genentech*, 566 F.3d at 1343. The District of Utah is more than 100 miles from this District. Ex. 50. Vivint's current employees with particular and unique knowledge of the design, development, marketing, sales, and finances of the Accused Products—Mssrs. Carlson, Nye, Santiago, and Dixon—live in Utah. *See* Exs. 16-19. Vivint's current employees who are inventors of the Counter Patents—Mssrs. Child, Matsuura, and Boynton—also live in Utah. *See* Exs. 26, 30, 34. The time and cost of trial attendance for these witnesses will be less in Utah than in this District. The inventors of the Asserted Patents, to the extent any are willing witnesses, live in New York, New Hampshire, France, Virginia, Washington, California, and Arizona. *See* Exs. 3-15. For those that live in Arizona, California, and Washington, travel to Utah is more convenient than travel to this District. Vivint also anticipates other ADC and ADT employee witnesses will reside around their headquarters in Tysons, VA, and Boca Raton, FL. Any such willing witness will incur time and expense traveling to Utah or this District. Due to the number of witnesses for whom Utah is more convenient, transfer to Utah will reduce the cumulative time and expense of witness travel.

### 4.    Other Practical Problems

No practical problems are presented by transferring to Utah. This factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 U.S. Dist. LEXIS 206019, at *13 (E.D. Tex. Nov. 27, 2019). Transfer will make this lawsuit

-13-

easier, more expeditious, and less expensive. First, the parties and the Court have not expended a significant amount of resources and hearing dates have not been set. The parties' initial scheduling conference is not scheduled until March 14, 2023. Second, Judge Waddoups has experience with the technology, parties, and products at issue. *See Farmobile*, 2022 U.S. Dist. LEXIS at *14-15 (finding transferee judge's familiarity with the parties and technology favored transfer). The Asserted Patents and the Vivint Utah Patents involve technology in the same field. This lawsuit and the Utah Lawsuits involve overlapping parties—Vivint, ADC, and ADT. And this lawsuit and the Utah Lawsuits involve overlapping products. In particular, this lawsuit involves Vivint's Accused Products (accused of infringement) and will also involve Plaintiffs' products (the subject of Plaintiffs' lost profits claims); the Utah Lawsuits involve Vivint's Accused Products (the subject of Vivint's lost profit claims) and also involve Plaintiffs' products (accused of infringement).

### C.       On Balance, the Public Interests Favor Transfer to the District of Utah

#### 1.       The District of Utah has a Strong Interest in This Lawsuit

Utah has a strong local interest in this lawsuit. This factor considers the relationship between the dispute and the community from which the jury pool will be drawn, as "jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. "[I]f there are significant connections between a particular venue and the events that give rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "[T]he sale of an accused product nationwide does not give rise to a substantial interest in any single venue." *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013). Vivint is headquartered in Utah and the design, development, management, and decision making related to the Accused Products have been centered, and continue to be centered, there today. Nye ¶¶4, 10. That same cannot be said of this District, whose interest is limited to Vivint's, ADC's, or ADT's nationwide sales.

-14-

Moreover, Plaintiffs "call into question" Vivint's work in Utah. Courts find the transferee district has strong local interest when the plaintiff's allegations "call into question 'the work and reputation' of engineers" located in the district. *Uniloc 2017 LLC v. Google LLC*, No. 2:18-cv-00504, 2020 U.S. Dist. LEXIS 100416, at *15-17 (E.D. Tex. June 8, 2020). Plaintiffs accuse Vivint of "a long history of misappropriating ADC's technology," including copying ADC's innovations and functionality, and "secretly developing a competing backend." Compl., ¶¶20-26. These allegations "call into question" the work of Vivint's engineers involved development of the Accused Products in Utah. In contrast, none of the development of the Accused Products occurred in this District. Thus, any local interest in this District is "nowhere near comparable" to the interest in Utah. *In re FedEx Corp. Servs., Inc.*, No. 2022-0156, 2022 U.S. App. LEXIS 28988, at *3-8 (Fed. Cir. Oct. 19, 2022) (reversing district court for finding this factor neutral on similar facts).

### 2.    The Remaining Public Interest Factors

The remaining public interest factors are neutral or slightly weigh against transfer. <u>First</u>, because the claims at issue arise under federal law, the courts' familiarity with the law factor is neutral. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). <u>Second</u>, there are no conflict of laws issues and so this factor is also neutral. The final factor considers court congestion, and addresses "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347. The median time to trial in patent cases has been approximately 24 months in this District and 36 months in Utah since January 1, 2000. Ex. 51. Given a trial date in this District will likely occur prior to a trial Utah, this factor slightly weighs against transfer. But this factor alone is speculative and cannot outweigh the other factors. *See, e.g.*, *In re Atlassian Corp., PLC*, No. 2021-0177, 2021 U.S. App. LEXIS 33790, at *11-13 (Fed. Cir. Nov. 15, 2021).

## IV.    <u>CONCLUSION</u>

Vivint respectfully requests that the Court transfer this lawsuit to the District of Utah.

-15-

Dated:  March 14, 2023

Respectfully submitted,

*/s/ Andy Tindel*

**MT2 LAW GROUP**
**MANN | TINDEL | THOMPSON**

Andy Tindel (TX Bar 20054500)
112 E. Line Street, Suite 304
Tyler, Texas 75702
Tel:  (903) 596-0900
Fax: (903)596-0909
atindel@andytindel.com

**FOLEY & LARDNER LLP**

David R. Wright (UT Bar 5164, *pro hac vice*)
Michael A. Manookin (UT Bar 15667, *pro hac vice*)
95 South State Street, Suite 2500
Salt Lake City, UT 84111
Tel: (801) 401-8900
Fax: (385) 799-7576
dwright@foley.com
mmanookin@foley.com

Pavan K. Agarwal (VA Bar 40351, *pro hac vice*)
Washington Harbour
3000 K Street N.W., Suite 600
Washington, D.C. 20007
Tel: (202) 672-5300
Fax: (202) 672-5399
pagarwal@foley.com

Jean-Paul Ciardullo (CA Bar 284170)
555 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 972-4500
Fax: (213) 486-0065
jciardullo@foley.com

Ruben J. Rodrigues (MA Bar 676573)
111 Huntington Avenue, Suite 2500
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
rrodrigues@foley.com

R. Spencer Montei (IL Bar 6313532)
321 North Clark Street, Suite 3000
Chicago, IL 60654
Tel: (312) 832-4500
Fax: (312) 832-4700
rmontei@foley.com

***Attorneys for Vivint, Inc.***

-16-

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 14, 2023.

*/s/ Andy Tindel*
Andy Tindel

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), I certify that counsel for Vivint, Inc. conferred with counsel for Alarm.com Incorporated, ICN Acquisitions, LLC, and ADT LLC by web conference on March 13, 2023. Counsel for Alarm.com Incorporated, ICN Acquisitions, LLC, and ADT LLC indicated that they were opposed to the relief requested and an impasse was reached.

*/s/ Andy Tindel*
Andy Tindel